**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JASON FRANCO, ABIGAIL FRANCO, MISTY M. LACY, and JOHN D. BAKER individually and on behalf of all other similarly situated class and subclass members,<br><br>Plaintiffs,<br><br>v.<br><br>CHOBANI, LLC,<br><br>Defendant. | Case No. 1:23-cv-3047<br><br>Honorable John J. Tharp, Jr. |

**CHOBANI, LLC'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION
COMPLAINT AND MEMORANDUM IN SUPPORT[1]**

---

[1] Counsel for both parties have conferred, and Plaintiffs intend to contest this motion, as reflected in the stipulated briefing schedule entered by the Court on June 13, 2023. *See* ECF No. 13.

# I. INTRODUCTION

Chobani's Zero Sugar yogurt uses ultrafiltered nonfat milk and sweeteners, including allulose, to provide consumers with a yogurt option that does not contain natural or added sugar. FDA has approved allulose as a sweetener, and FDA has advised the food industry that allulose should not be treated as a sugar for labeling purposes. FDA has determined that allulose is not metabolized by the human body, does not affect glucose levels in the bloodstream, and does not lead to tooth decay. FDA also has recognized that the use of allulose as a sugar substitute may reduce sugar consumption and thereby improve public health.

Plaintiffs' Complaint seeks to substitute Plaintiffs' judgment for FDA's. Plaintiffs allege that because—as a matter of chemistry—allulose is a "monosaccharide," it must be deemed a "sugar," which makes Chobani's Zero Sugar labels false. But FDA obviously understands the chemistry of allulose, and FDA has explained that due to its distinct chemical composition allulose does not function like a sugar in the body. For that reason, FDA does *not* consider allulose a sugar for labeling purposes, and has issued that guidance publicly. In addition, Chobani also specifically sought—*and received*—approval of the formulation *and* labeling for its Zero Sugar yogurt from FDA.

Plaintiffs are attempting to use state-law claims to override FDA's careful and considered regulatory determination as reflected in both its guidance to the food industry and specific approval of Chobani's Zero Sugar yogurt. The Court should dismiss this suit, which is meritless under the law and which (if left to proceed) would deter the use of an ingredient that FDA believes could make a meaningful contribution to public health by decreasing sugar consumption.

# II. BACKGROUND

Chobani is a global food company that manufactures Greek Yogurt products. In June 2021, Chobani released a new line of Zero Sugar yogurts (the "Products") offered in a variety of flavors.

1

The Products are manufactured using non-GMO ingredients that meet strict quality criteria. Through an innovative and proprietary process, Chobani removes naturally occurring sugars in milk and sweetens the Products with allulose, a naturally-occurring sugar substitute that FDA has recognized as a safe and suitable sweetener for foods and beverages. *See The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* at 2, (Ives Decl. Ex. A) ("Guidance"). By using allulose, Chobani's Zero Sugar Products deliver sweetness without the calories, glucose impact, and tooth decay associated with sugar.

Plaintiffs are four consumers who reside in Illinois (Jason Franco and Abigail Franco), Arizona (Misty M. Lacy), and Kansas (John D. Baker). Each Plaintiff alleges they made purchases of the Products in their home states. Compl. ¶¶ 8–9; 10; 11, ECF. No. 1. Although they do not dispute that the Products correctly listed "0g" as the amount of "Total Sugars" in the nutrition facts panel, they allege the Zero Sugar label deceived them because, in their view, allulose should be labeled as a sugar. *Id.* ¶ 114. They base this claim solely on their view of the chemical structure of allulose—which they describe as a monosaccharide—and suggest its chemical structure is similar (though not identical) to fructose. *Id.* ¶ 37. They allege that they would not have bought the Products or would have paid less for them had they known that the Products contain "sugar." *Id.* ¶ 118. They also allege that Chobani violated FDA regulations governing nutrient content claims by labeling the Products as Zero Sugar when they include allulose. *Id.* ¶ 65, 75.

Plaintiffs seek to bring a nationwide class action raising a swath of consumer protection claims from nearly forty states. Compl. at 29–35. The Complaint asserts forty-one consumer

protection counts under 37 different state laws,[2] in addition to claims for declaratory judgment and unjust enrichment.

### III. LEGAL STANDARD

State-law claims that are preempted by federal law must be dismissed on the merits with prejudice. *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 425 (7th Cir. 2011). Additionally, to survive a motion to dismiss under Federal Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept factual allegations as true, that requirement is "inapplicable to legal conclusions." *Id.* at 678.

A district court also should dismiss claims asserted in a complaint if the Court lacks personal jurisdiction over the Defendant with respect to those claims. Fed. R. Civ. P. 12(b)(2); *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 265 (2017) (due process requires "a connection between the forum and the specific claims at issue"). Similarly, a district court must dismiss any claims for which the Plaintiff fails to establish Article III standing. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (A plaintiff "must demonstrate standing for each claim he seeks to press") (simplified); *see also* Fed. R. Civ. P. 12(b)(1).

---

[2] Plaintiffs specifically plead consumer protection violations in the following states: Illinois, Kansas, Arizona, Alabama, California, Colorado, Connecticut, Delaware, Florida, Hawai'i, Idaho, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Vermont, Virginia, Washington, and Wisconsin.

## IV. ARGUMENT

### A. Plaintiffs' Claims Are Preempted By Controlling FDA Regulations.

Plaintiffs may not use state-law claims to impose their own labeling preferences where they conflict with federal requirements. *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). Plaintiffs' claims should be dismissed as preempted because they seek to impose different requirements than those enforced by FDA for the labeling of allulose.

#### 1. FDA Does Not Treat Allulose As A Sugar For Labeling Purposes.

Plaintiffs do not allege that the Products contain any sugar other than allulose. FDA has determined that allulose should not count towards the amount of "Total Sugars" or "Added Sugars" in a product. FDA made this determination in formal guidance for the food and beverage industry on issues of labeling and compliance. *See* 21 C.F.R. § 101.13. FDA's views of its regulations, expressed in the Guidance, "are 'controlling unless [they are] plainly erroneous or inconsistent with the regulations' or there is any other reason to doubt that they reflect the FDA's fair and considered judgment." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 613 (2011) (*quoting Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

FDA carefully evaluated how allulose should be treated for labeling purposes. *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* at 4, (Ives Decl. Ex. A) ("Guidance"). FDA's view is that allulose should *not* be considered in reporting Total Sugars or Added Sugars in the nutrition facts panel. *Id.* at 8. Indeed, FDA's guidance on allulose emphasizes the significant public health value in not treating allulose as a sugar for labeling purposes: "[W]e expect that the caloric contribution of allulose will be insignificant in most cases and will substantially reduce the amount of total calories and calories from added sugars in products where it replaces those added sugars." *Id.*; *see also id.* at 7.

4

While noting that, prior to the Guidance, manufacturers *were* required to include allulose in the amount of "Total Sugars" and "Added Sugars," FDA declared that this old approach is out of date given "advances in food technology" and FDA's "current view" that "not only the chemical structure of sugars, but also other evidence, including their association with dental caries and how they are metabolized in the body (e.g., caloric contribution and their effect on blood glucose and insulin levels) [should be evaluated] when determining whether a sugar should be included in the declaration of 'Total Sugars' on the label." *Id.* at 6. As a result, FDA said it would "exercise enforcement discretion" to permit manufacturers to exclude allulose from the amount of "Total Sugars" in their products and that "allulose *should not* be included in the 'Added Sugars' declaration." *Id.* (emphasis added). FDA determined instead that its "existing definition of carbohydrate" best described allulose, and that allulose should be included within the calculation of "Total Carbohydrate," like other substances "without significant caloric contribution." *Id.* FDA continued to require manufacturers to declare the presence of allulose in a product's ingredient statement "so that consumers can determine when it is an ingredient in a food." *Id.* at 8. And it stated that this Guidance would control "pending future rulemaking" relating to the "Total Sugars" definition. *Id.* FDA's exclusion of allulose from "Total Sugars" and "Added Sugars" applies both to statements in the nutrition facts panel and to "zero sugar" nutrient content claims made elsewhere on the product label. *See* 21 C.F.R. § 101.60(c)(1)(i).

**2. FDA Approved Chobani Zero Sugar Yogurt Labels In The Course of Issuing A TMP.**

Beyond its general guidance for the food and beverage industry, FDA has also specifically reviewed and approved Chobani's Zero Sugar labels for the Products containing allulose. In January 2022, Chobani applied for a temporary marketing permit ("TMP") for its Zero Sugar yogurt products. *See Chobani Zero Sugar\**, https://www.chobani.com/products/yogurt/zero-sugar

5

(last visited July 28, 2023) (Ives Decl. Ex. B) ("TMP Application").[3] A TMP permits food and beverage companies to market and sell products that differ from the generally applicable "standards of identity" that FDA has developed for certain foods and beverages in order to see how consumers will respond to them. *See* 21 C.F.R. § 130.17(a). Chobani applied for a TMP because its Zero Sugar product used ultrafiltered nonfat milk and non-nutritive sweeteners, which diverged from the then-existing requirements for labeling a product as a yogurt, which requires the use of "cream, milk, partially skimmed milk, [or] skim milk" as basic ingredients. *See* 21 C.F.R. § 131.200(b). In its application, Chobani told FDA that the Products were different from traditional yogurts through "the utilization of ultrafiltered nonfat milk as a basic dairy ingredient and through the addition of water and non-nutritive sweeteners," including, specifically, allulose. TMP Application at 2, 3. And as part of the TMP process, as required by 21 C.F.R. § 130.17(c)(9), Chobani submitted to FDA the Zero Sugar labels it intended to use for the Products. TMP Application at 8–9. FDA reviewed the product labels for compliance with its regulations, and after review FDA authorized the marketing and sale of the Zero Sugar Products. Chobani's TMP application was approved and published in the Federal Register on March 28, 2023.[4] Yogurt

---

[3] This Court "may take judicial notice of undisputed material hosted on a party's public website." *Newbold v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 9131, 2015 WL 13658554, at *4 n.7 (N.D. Ill. Jan. 23, 2015); *see also Patterson v. Respondus, Inc.*, No. 20 C 7692, 2022 WL 7100547, at *8 n.12 (N.D. Ill. Oct. 11, 2022) ("Judicial notice under [Federal] Rule [of Evidence] 201 may extend to facts contained on a defendant's website.") (citing *Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018)). Chobani's Zero Sugar TMP application is publicly available on its website through the "*Learn more about our Zero Sugar\* Greek Yogurt: here*.\*" link which contains the full contents of Chobani's January 2022 TMP submission to FDA. As a publicly available document on Chobani's website, this Court may take judicial notice of the TMP application. *See Newbold*, 2015 WL 13658554, at *4 n.7.

[4] This Court may take judicial notice of official agency determinations. *Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000); *see also Vincent v. Medtronic, Inc.*, 221 F. Supp. 3d 1005, 1007 (N.D. Ill. 2016).

Products Deviating From Standard of Identity; Temporary Permit for Market Testing, 88 Fed. Reg. 18322-01 (Mar. 28, 2023) (Ives Decl. Ex. C).

### 3. Plaintiffs' Claims Conflict With FDA's Controlling Regulations And Guidance.

Against this backdrop, it is straightforward to conclude that Plaintiffs' claims are preempted. Under the Nutrition Labeling and Education Act, states are expressly preempted, including through civil litigation alleging violations of state law, from imposing "any requirement for the labeling of food . . . that is *not identical*" to the requirements of federal law. 21 U.S.C. § 343-1(a)(2) (emphasis added). Courts routinely dismiss claims challenging food and beverage labeling when the claims would require manufacturers to label products in a way that is different from, or in addition to, the requirements imposed by FDA. *See Turek*, 662 F.3d at 427 (because disclaimers plaintiff sought were "not identical to the labeling requirements imposed on [the] products by federal law," claims of mislabeling were barred).

Plaintiffs attempt to plead around preemption in two ways. First, the Complaint suggests that FDA's determination that allulose should not be treated as a sugar for labeling purposes should be disregarded because it is found in non-binding guidance, rather than in the regulations themselves. Compl. ¶ 90. But "FDA's views of its own regulations are controlling unless plainly erroneous or inconsistent with the regulations or there is any other reason to doubt that they reflect the FDA's fair and considered judgment." *PLIVA, Inc.*, 564 U.S. at 613 (simplified). There is no question that the Guidance "reflect[s] FDA's fair and considered judgment" on the issue of allulose labeling. In issuing the Guidance, FDA considered multiple "citizen petitions" submitted by interested parties requesting clarification from the Agency on the appropriate labeling requirements for allulose. Guidance at 1–2. FDA also considered clinical trial data, comments submitted to prior FDA dockets regarding a 2014 proposed rule on nutrition and supplemental

7

facts labels and a prior draft guidance on allulose that was issued in April 2019. *Id.* In addition to this data, FDA conducted its own "independent review of the scientific evidence on the cariogenic potential, metabolism, and caloric value of, and glycemic response to, allulose." *Id.* at 2. After this review, FDA issued its guidance stating that it does not consider allulose as a sugar for labeling purposes. State law class actions like this one cannot be used to punish what federal law permits. *See Turek*, 662 F.3d at 426 (state law may only impose "the *identical* requirement[s]" of federal law) (emphasis in original).

Second, Plaintiffs contend that FDA's guidance applies only to the Total Sugars and Added Sugars on the nutrition facts panel, and not to Chobani's use of the Zero Sugar label on the front of the pack, which Plaintiffs allege is an improper "nutrient content claim" under 21 C.F.R. 101.60(c)(1). That regulation permits a Zero Sugar claim where a product: (1) "contains less than 0.5 g of sugars, as defined in [21 C.F.R.] § 101.9(c)(6)(ii)," per serving; (2) "contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars"; and (3) is either labeled "low calorie" or "reduced calorie" or includes a disclaimer saying it is "not a low calorie food." 21 C.F.R. §§ 101.60(c)(1)(i)–(iii). Plaintiffs contend that FDA did not address nutrient content claims in the Guidance and allege that, because allulose as a matter of chemistry is a "sugar," the use of a Zero Sugar nutrient content claim violates requirements (1) and (2) above.

Plaintiffs are incorrect. FDA's determination that allulose is not a "Total Sugar" also authorizes a Zero Sugar nutrient content claim. The nutrient content claim regulation governing Zero Sugar claims, 21 C.F.R. § 101.60(c)(1)(i), specifically directs manufacturers to assess the amount of sugars in their product *as defined* by the definition of "Total Sugars" in 21 C.F.R. § 101.9(c)(6)(ii)—precisely the definition that FDA's guidance addresses. Because the Products contain no "Total Sugars" under § 101.9(c)(6)(ii), they do not contain sugar under the express

8

terms of the nutrient content claim regulation in § 101.60(c)(1)(i). Moreover, 21 C.F.R. § 101.13(o) states that nutrient content claims should be using the same methodology "Total Sugars" are calculated under 21 C.F.R § 101.9. And on top of that, FDA reviewed Chobani's Zero Sugar label and formulation and approved Chobani's TMP application. Plaintiffs may disagree with FDA's determination, but that disagreement is no basis to avoid preemption. Indeed, Plaintiffs' suggestion that Chobani could exclude allulose and declare 0g Total Sugars in the nutrition facts panel—but *include* allulose in sugar declarations elsewhere on the label—is unfounded. That conflicting information would confuse consumers, and the state-by-state label variations this position would mandate is precisely what NLEA preemption was intended to prevent. *Turek*, 662 F.3d at 427.

### 4.     Chobani's Conduct Falls Within ICFA's Safe Harbor Provision.

Plaintiffs' claim under the Illinois Consumer Fraud Act ("ICFA") independently fails because Chobani's conduct falls within ICFA's safe harbor provision. ICFA establishes a safe harbor for actions that are "specifically authorized by laws administered by any regulatory body or officer acting under statutory authority" of the United States. 815 Ill. Comp. Stat. Ann. 505/10b. The Seventh Circuit has explained that under ICFA's safe harbor provision, "[f]ormal rulemaking is not necessary; 'informal regulatory activity' is enough" to establish specific authorization. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736–37 (7th Cir. 2019). That is precisely the case here.

Illinois courts have consistently found that informal agency action qualifies as specific federal authorization under the safe harbor provision. *See Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 46 (Ill. 2005) ("informal regulatory activity" qualified as specific federal authorization); *see also Lanier v. Assocs. Fin., Inc.*, 499 N.E.2d 440, 447 (Ill. 1986) (same conclusion for agency staff

9

interpretations of law). FDA's Guidance meets that standard because it clearly announced to the food and beverage industry that allulose should not be counted as a sugar on food labels.

In addition, FDA *specifically approved* the Products' labels by issuing a TMP—a formal regulatory action reported in the Federal Register—allowing Chobani to market its Zero Sugar yogurt containing allulose. 88 Fed. Reg. 18322-01. Plaintiffs thus seek to hold Chobani liable under ICFA for a label that FDA has *specifically authorized*. This is not permitted under ICFA's safe harbor provision. *See Price*, 848 N.E. at 46; *Cf. Riegel v. Medtronic, Inc.*, 552 U.S. 312, 323–24 (2008) (FDA's premarket approval of a medical device preempts state common-law actions).

**B.      The Primary Jurisdiction Doctrine Requires a Stay of These Proceedings.**

If the Court does not dismiss Plaintiffs' claims as preempted, the claims should be stayed under the primary jurisdiction doctrine given the significance of this question to the food and beverage industry. Allulose has the potential to make a long-term positive impact on public health by lowering consumption of total and added sugars. FDA has also encouraged its use. If those outcomes are to be put in jeopardy, FDA should be given the opportunity to weigh in on this matter. Courts frequently refer questions to FDA under the doctrine of primary jurisdiction when the agency's views would aid the Court's analysis of a matter.[5]

Plaintiffs attempt to plead around primary jurisdiction by stating that FDA has not publicly signaled its intent to issue more formal regulations about allulose. But that is incorrect, as FDA *did* say in its Final Guidance on allulose that its enforcement decision shall control "pending future

---

[5] Courts have consistently applied the primary jurisdiction doctrine in this context because issues of "food labeling are sufficiently complex that they are best left to FDA for consideration prior to judicial review." *Taradejna v. Gen. Mills, Inc.*, 909 F. Supp. 2d 1128, 1134 (D. Minn. 2012) (simplified); *see also Hood v. Wholesoy & Co.*, No. 12-CV-5550-YGR, 2013 WL 3553979, at *5 (N.D. Cal. July 12, 2013) (applying primary jurisdiction doctrine because "[f]ood labeling enforcement . . . requires the FDA's expertise and uniformity in administration").

10

rulemaking regarding amending the definition of 'Total Sugars.'" Guidance at 8. Plaintiffs allege that FDA has not provided a date on which it will make changes to the regulation. Compl. ¶ 96. But courts have authorized stays under the primary jurisdiction doctrine even when the timing of agency action is unclear. *See Taradejna*, 909 F. Supp. 2d at 1134 (applying primary jurisdiction doctrine three years after a proposed rule was issued because it "would be imprudent for the Court, at this juncture, to substitute its judgment for that of the Agency's while revision of the standard of identity is pending"). Plaintiffs also say that FDA's intent to enact a final rule applies only to the "Total Sugars" definition for the nutrition facts panel and not the regulation that governs Zero Sugar nutrient content claims. Compl. ¶ 93. But again, the regulation that governs nutrient content claims about sugar, 21 C.F.R. § 101.60(c)(1)(i), specifically directs manufacturers to assess the amount of sugars in their product *as defined* by the definition of "Total Sugars" in 21 C.F.R. § 101.9(c)(6)(ii), which is the subject of the "future rulemaking" FDA would address. The Court should not allow Plaintiffs' claims to proceed when FDA's Guidance already makes clear that doing so conflicts with how FDA has determined allulose should be labeled. But if the Court has any doubts, the question is better referred to the expert agency to resolve because it is "uniquely qualified to resolve the complexities" involving nationwide food and beverage labeling. *See Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991).

C.     **No Reasonable Consumer Would Be Deceived By The Challenged Labels.**

Plaintiffs' claims also should be dismissed for the independent reason that they do not state a viable claim of consumer fraud because no reasonable consumer would be deceived by the Zero Sugar labels. To state a claim for consumer fraud, Plaintiffs must allege that "a significant portion of the general consuming public or targeted consumers, acting reasonably under the circumstances, could be misled." *Cristia v. Trader Joe's Co.*, No. 22 CV 788, 2022 WL 17551552, at *3 (N.D. Ill. Dec. 9, 2022). "Relevant circumstances include all the information available to consumers and

11

the context in which that information is provided and used." *Id.* (simplified). "What matters most is how real consumers understand and react to the advertising." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020).

Plaintiffs' theory is that consumers interpret any reference to "sugar" on a product label to refer to chemical structure, and, specifically, to the presence of a monosaccharide. They emphasize that allulose is a monosaccharide and include in their Complaint an illustration of the chemical composition of allulose as compared to fructose. Compl. ¶ 38. But that is not how reasonable consumers operate. Reasonable consumers are not experts in chemistry and Plaintiffs cannot plausibly allege that they have specific expectations about the number of "monosaccharides" in a product they purchase. Instead, as FDA observed in its Final Guidance, reasonable consumers look to information about sugars on product labels with a view to "maintaining healthy dietary practices." Guidance at 6. Information about sugars on a product label "provides consumers with information that they can use to evaluate the contribution of sugars in their diet to the risk of dental caries" or "to determine whether a product contains sugars that are likely to cause an increase in circulating blood glucose and insulin levels." *Id.* at 7. Allulose does none of those things and is not what consumers ordinarily understand to be a sugar. When plaintiffs "base deceptive advertising claims on unreasonable . . . interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 477.

Indeed, it would be *counterproductive* and *confusing* to consumers to treat allulose as a sugar on food labels. As FDA has recognized, "the 'Total Sugars' declaration provides consumers with information that they can use to determine whether a product contains sugars that are likely to cause an increase in circulating blood glucose and insulin levels." Guidance at 7. And "some consumers expect that when they eat sugars, the result will be an increase in blood glucose and

12

insulin levels." *Id.* Plaintiffs' demand that allulose be labeled as a sugar would only confuse consumers and potentially steer them away from the very types of no-sugar products they are seeking.[6]

### D. Plaintiffs' Out of State Claims Are Procedurally Barred.

Plaintiffs' Complaint fails in its entirety on the merits. But even if Plaintiffs' claims could proceed, their out-of-state claims are independently barred for two reasons.

First, Plaintiffs cannot establish specific personal jurisdiction over Chobani for all of their non-Illinois claims. In *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, the Supreme Court held that out-of-state plaintiffs could not rely on their out-of-state purchases to establish personal jurisdiction over the defendant. 582 U.S. 255, 264–65 (2017). Here, Plaintiffs seek to represent a nationwide class of consumers who allegedly purchased Chobani's yogurts in other states. But Plaintiffs' non-Illinois claims have "no connection with [Illinois] beyond their similarity to claims asserted by other plaintiffs." *Chavez v. Church & Dwight Co.*, No. 17 C 1948, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018). As a result, Plaintiffs' non-Illinois claims must be dismissed for lack of personal jurisdiction.[7] *See, e.g.*, *id.*; *DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018); *McDonnell v. Nature's Way Prod., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017).

Second, Plaintiffs lack standing for their claims arising from purchases made in states in which they do not reside. Plaintiffs allege specific purchases of Chobani yogurt in a mere three

---

[6] This is precisely why FDA stated that "we consider a sugar's effect on blood glucose and insulin levels to be important considerations when determining whether a sugar should be excluded from the 'Total Sugars' declaration." Guidance at 7.

[7] Plaintiffs have no grounds to argue for general personal jurisdiction, given that Chobani is incorporated in Delaware, Compl. ¶ 12, and has its principal place of business in New York, *id.*

out of thirty-seven states: Illinois, Arizona, and Kansas (Counts 1–3). Compl. at 39, 41 & 42. For the remaining thirty-four states (Counts 4–40), Plaintiffs fail to allege any specific purchases of Chobani yogurt. Compl. at 43–90. They lack standing for these claims. It is a bedrock principle that a plaintiff must have suffered an injury-in-fact under the law which he seeks to vindicate. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). And it is well-settled that "[s]tanding cannot be acquired through the back door of a class action." *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002). Courts in this district have dismissed similar state-law claims when Plaintiffs have failed to allege a personal injury for their other state claims. *See, e.g.*, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CV 3690, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 923–24 (N.D. Ill. 2009). Here, just as in *Dairy Farmers*, Plaintiffs do "not allege personal injury" in thirty-four states and have thus "fail[ed] to satisfy their burden of showing Article III standing for states in which they do not reside and/or did not purchase the products." 2013 WL 4506000, at *8. These out-of-state claims should be dismissed.

### E. Plaintiff's Tag-Along Unjust Enrichment Claim Also Fails.

Finally, even assuming that Plaintiffs' ICFA claim survives, Plaintiffs' unjust enrichment claim also fails because "unjust enrichment is only available when there is no adequate remedy at law." *Inorio v. Wells Fargo Bank, N.A.*, 522 F. Supp. 3d 417, 425 (N.D. Ill. 2021) (*quoting Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 702 (Ill. Ct. App. 2005)). Here, Plaintiffs' unjust enrichment claim is entirely predicted upon Chobani's alleged violation of the ICFA. Because the ICFA provides successful plaintiffs with the right to recover actual damages, 815 Ill. Comp. Stat. Ann. 505/10a, Plaintiffs have an adequate remedy at law and their unjust enrichment claim must be dismissed.

## V.  CONCLUSION

Plaintiffs' claims seek to upend the labeling of Chobani's products based on their view that allulose should be treated as a sugar.  But FDA has determined otherwise and it is the Agency's expert view that controls as a matter of preemption and ICFA's safe harbor.  Plaintiffs' effort to impose their preferred approach is especially inappropriate here, where FDA has specifically reviewed and authorized the marketing and use of Chobani's Zero Sugar labels.  Plaintiffs' claims are fundamentally defective and no amendment can salvage them.  The Complaint should be dismissed with prejudice.

Dated: July 28, 2023

Respectfully submitted,

By: /s/ *Andrew S. Tulumello*

Andrew S. Tulumello
**WEIL, GOTSHAL & MANGES LLP**
2001 M Street, N.W.
Washington, DC 20036
Telephone: (202) 682-7100
Facsimile: (202) 857-0940
drew.tulumello@weil.com

Erik J. Ives
**FOX, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 224-1239
Facsimile: (312) 224-1201
eives@foxswibel.com

*Counsel for Defendant Chobani, LLC*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on July 28, 2023, he caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which shall send notification of such filing to all counsel of record.

By: /s/ *Andrew S. Tulumello*