# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Jason Franco, Abigail Franco, Misty M. Lacy, and John D. Baker individually and on behalf of all other similarly situated class and subclass members,

       Plaintiffs,

    v.

Chobani, LLC

       Defendant.

Case No. 1:23-cv-03047

Honorable John J. Tharp, Jr.

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CHOBANI, LLC'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES .........................................................................ii

I.   Defendant Mischaraterizes FDA Labeling Regulations...................................... 2

    A.   Nutrition Panel Declarations vs. Nutrient Content Claims..................... 2

    B.   Defendant's 2023 Temporary Marketing Permit ...................................3

II.  Legal Standard. ..............................................................................................4

III. Argument...................................................................................................... 5

    A.   Plaintiffs' Claims are not Preempted ......................................................... 5

        i.    Allulose is a Sugar Under FDA Labeling Regulations................. 6

        ii.   Chobani's New Label Also Treats Allulose as a Sugar ............... 7

        iii.  Plaintiffs' Claims do not Conflict with the Allulose Guidance .... 8

        iv.   The FDA Did Not "Approve" Defendant's Label ........................ 11

    B.   Consumer Fraud "Safe-Harbor" Exceptions do not Apply ......................12

    C.   The Primary Jurisdiction Doctrine Does Not Apply ...............................13

    D.   Plaintiffs Adequately Allege that the Labels are Deceptive ................ 15

    E.   Jurisdiction and "Out of State" Claims ................................................... 16

        i.    Bristol-Meyers Squibb Does Not Apply to the Claims of Unnamed Class Members ....................................................... 17

        ii.   Named Illinois Plaintiffs Have Article III Standing................. 17

        iii.  Defendant has Consented to Illinois Jurisdiction...................... 18

IV.  Counts 41, 42 and 43 All Survive ........................................................................20

V.   Conclusion ......................................................................................................20

## TABLE OF AUTHORITIES

### CASES

*Acosta-Aguayo v. Walgreen Co.*, No. 22-CV-00177,
   2023 WL 2333300 (N.D. Ill. Mar. 2, 2023) ........................................................ 17

*Advanced Dermatology v. Fieldwork, Inc.*, 550 F. Supp. 3d 555 (N.D. Ill. 2021) ..... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 5

*Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*,
   2017 IL 121281, N.E.3d 440, .......................................................................... 20

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ......................... 14

*Bell v. Publix Super Markets, Inc.,* 982 F.3d 468
   (7th Cir. 2020) ...................................................1, 4, 5, 6, 8, 9, 10, 11, 12, 15, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 4

*Biffar v. Pinnacle Foods Grp., LLC,* No. 16-0873-DRH,
   2016 WL 7264973 (S.D. Ill. Dec. 15, 2016) ................................................... 13, 16

*Bojko v. Pierre Fabre USA Inc.,* No. 22 C 6728,
   2023 WL 4204663 (N.D. Ill. June 27, 2023) ..................................................... 18

*Bonahoom v. Staples, Inc.,* No. 20-CV-1942,
   2021 WL 1020986 (N.D. Ill. Mar. 17, 2021) .................................................... 18

*Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362 (7th Cir. 2018) ...................... 4

*Bristol-Meyers Squibb,* 582 U.S. 255, 137 S. Ct. 1773,
   198 L. Ed. 2d 395 (2017) ............................................................................... 17

*Burton v. Hodgson Mill, Inc.*, No. 16-CV-1081-MJR-RJD,
   2017 WL 1282882 (S.D. Ill. Apr. 6, 2017) ....................................................... 15

*Calderon v. Procter & Gamble Co.*, No. 22-CV-3326,
   2023 WL 3627797 (N.D. Ill. May 24, 2023) .................................................. 5, 16

*Chavez v. Church & Dwight Co.,* No. 17 C 1948,
   2018 WL 2238191 (N.D. Ill. May 16, 2018) ............................................. 13, 14, 20

*Clark v. Blue Diamond Growers*, No. 22-CV-1591,
   2023 WL 4351464 (N.D. Ill. July 5, 2023) ..................................................... 1, 18

*Consumer Program Adm'rs, Inc. v. K.B. Parrish & Co., L.L.P.*,
   2009 WL 4788681 ......................................................................................... 20

*Curran v. Bayer Healthcare LLC*, No. 17 C 7930,
2019 WL 398685 (N.D. Ill. Jan. 31, 2019) ....................................................... 13

*Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746,
187 L. Ed. 2d 624 (2014)............................................................................. 20

*Employers Ins. of Wausau v. Banco De Seguros Del Estado*,
199 F.3d 937 (7th Cir.1999) ........................................................................ 20

*Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021) ................................. 10, 15

*Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018) ...................................... 16

*Hendricks v. Starkist Co.*, No. 13-CV-729 YGR, 2014 WL 5144551
(N.D. Cal. Oct. 13, 2014) (N.D. Cal. Oct. 13, 2014) .................................... 12

*In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prod. Liab. Litig.*,
No. 22 C 02011, 2023 WL 4976182 (N.D. Ill. Aug. 3, 2023)....................... 18, 19, 20

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CV 3690,
2013 WL 4506000 (N.D. Ill. Aug. 23, 2013)........................................... 18

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) ....................................................... 15

*In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074 (C.D. Cal. 2017) .................... 12

*Leszanczuk v. Carrington Mortg. Servs., LLC*, No. 19-CV-3038,
2020 WL 1445612 (N.D. Ill. Mar. 25, 2020......................................... 17

*Lyngaas v. Ag*, 992 F.3d. 412, 434–35 (6th Cir. 2021)............................... 17

*Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2045,
216 L. Ed. 2d 815 (2023)......................................................... 1, 17, 18, 19, 20

*Moore v. Mars Petcare US, Inc.*, No. 16-CV-07001-MMC,
2021 WL 6063577 (N.D. Cal. Dec. 22, 2021) ....................................... 11

*Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ............................... 17

*Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835,
2018 WL 364711 (N.D. Ill. Aug. 1, 2018)........................................... 18

*Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020).................................... 1, 17

*Paschoal v. Campbell Soup Co.*, No. 21-CV-07029-HSG,
2022 WL 4280645 (N.D. Cal. Sept. 15, 2022) ....................................... 14

*PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) ............................................................. 10

*Porter v. NBTY, Inc.*, No. 15 CV 11459
  2019 WL 5694312 (N.D. Ill. Nov. 4, 2019) .............................................................. 16

*Price v. Philip Morris, Inc.,* 848 N.E.2d 1, 36 (2005) .................................................. 13

*Reid v. Johnson & Johnson*, 780 F.3d 952, 964 (9th Cir. 2015) ....................... 5, 10, 16

*R.R. Donnelley & Sons Co. v. Jet Messenger Servs., Inc.*, 2004 WL 1375402 .......... 20

*Schneider v. Mott's LLP,* No. 3:21-CV-1251-NJR,
  2022 WL 4314207 (S.D. Ill. Sept. 19, 2022) ..................................................... 10, 16

*State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41 (Mo. 2017) ................... 19, 20

*Turek v. Gen. Mills, Inc.*, 662 F.3d 423 (7th Cir. 2011) ................................................ 8

*Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730 (7th Cir. 2019) ........................... 13

*W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670 (7th Cir. 2016) .......................... 5

## STATUTES AND OTHER AUTHORITIES

21 C.F.R § 101.9 ............................................................................................................. 2

21 C.F.R § 101.9(c)(6)(ii) ............................................................................................... 6

21 C.F.R § 101.9(d)(11) .................................................................................................. 2

21 C.F.R § 101.13(b) ............................................................................................... 2, 8, 9

21 C.F.R § 101.13(c) ..................................................................................................... 16

21 C.F.R § 101.60(c) ....................................................................................................... 5

21 C.F.R § 101.60(c)(1) ............................................................................................ 3, 16

21 C.F.R § 101.60(c)(1)(i) ......................................................................................... 8, 12

21 C.F.R § 101.60(c)(1)(ii) ......................................................................................... 7, 8

21 C.F.R § 130.17 ...................................................................................................... 3, 11

21 C.F.R § 131.200(b) ..................................................................................................... 4

805 Ill. Comp. Stat. Ann. 5/13.10 ............................................................................... 19

805 Ill. Comp. Stat. Ann. 180/45-5(a)(8) ........................................................................ 19

Mo. Ann. Stat. § 351.572 ................................................................................................ 19

## INTRODUCTION

Defendant's Motion to Dismiss reveals that Chobani has recently changed the ingredient labeling on its "zero sugar" yogurt to identify allulose as a sugar. *See infra* pp. 7-8. In addition to this revelation, the Motion mischaracterizes FDA regulations and guidance and ignores controlling adverse authority. For all of these reasons it should be denied in its entirety.

None of Plaintiffs' claims are preempted because Chobani's label violates **both** FDA regulations and state laws. *Bell v. Publix Super Markets, Inc.,* 982 F.3d 468, 485 (7th Cir. 2020). The FDA has expressly confirmed that its current regulatory definition of sugar does not exempt allulose, and these regulations are fully effective and enforced. Ex.1, Tagatose Ltr., 3. As for Chobani's 2023 "temporary marketing permit," the 7th Circuit has rejected the same "TMP" argument that Defendant makes here. *Bell,* 982 F.3d, at 486. The FDA's own regulations prohibit it from "pre-approving" food labels, and this is no exception. Ex. 2, FDA Labeling Guidance, 4.

This Court has subject matter and personal jurisdiction over all of Plaintiffs' claims. Defendant has consented to suit in this Court by registering to do business and appointing an agent for service of process in Illinois. *Mallory v. Norfolk S. Ry. Co.,* 143 S. Ct. 2028, 2045, 216 L. Ed. 2d 815 (2023). And even if that were not the case, this Court would still have jurisdiction over the claims of the named Illinois plaintiffs and the unnamed class plaintiffs. *Clark v. Blue Diamond Growers*, No. 22-CV-1591, 2023 WL 4351464, at *6 (N.D. Ill. July 5, 2023); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020).

## I. DEFENDANT MISCHARACTERIZES FDA LABELING REGULATIONS

Plaintiffs' claims all turn on application of state law. However, Defendant has placed its compliance with FDA nutrient content claim regulations at issue with its preemption and abstention arguments. For this reason, it is important to correct Defendant's mischaracterization of this regulatory framework.

### A. Nutrition Panel Declarations vs. Nutrient Content Claims

There are different regulations governing (i) mandatory declarations contained within the well-known Nutrition Panel, and (ii) voluntary "nutrient content claims" made elsewhere on the packaging outside of the Nutrition Panel.

Nutrition Panel declarations are governed by 21 C.F.R. § 101.9, which establishes the rules regarding what can (and must) be declared within the four walls of the Nutrition Panel. This regulation confirms exactly what the "Nutrition Panel" is, and provides exemplar images such as the below:

21 C.F.R. § 101.9(d)(11). When the FDA refers to "declarations" made in the "Nutrition Panel," it is narrowly referring to the statements made **inside** of boxes that look like this example. Labeling statements made **outside** of the Nutrition Panel box have their own separate regulations. *See, e.g.,* 21 C.F.R. § 101.13(b).

2

Nutrient content claims are statements made outside the Nutrition Panel that "expressly or implicitly characterize[] the level of a nutrient" like sugar. *Id.* Unlike Nutrition Panel declarations, nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. *Id.* The "Zero Sugar" and "No Sugar" nutrient content claims at issue in this case are governed by their own regulation. 21 C.F.R. § 101.60(c)(1). As alleged in the Complaint, Defendant has violated this regulation because (i) the four grams of allulose in each serving exceed the 0.5 gram regulatory threshold for making a "zero sugar" claim, and (ii) the ingredient list does not include a sugar asterisk and disclaimer for allulose. Compl., ¶¶ 65-85.

### B. Defendant's 2023 Temporary Marketing Permit

Defendant mischaracterizes the purpose and effect of the 2023 TMP issued to it by the FDA. TMPs are governed by 21 C.F.R. § 130.17. This regulation states that the "sole purpose" of TMPs is to permit the sale of "experimental packs of food" that do not adhere to the "standards of identity" established by the FDA. *Id.* Standards of identity establish the ingredients that may and may not be used in the production of certain well-known foods (examples include "applesauce" and "tomato juice").

The FDA first proposed a standard of identity for yogurt in 1981. Ex.3, FDA Final Yogurt Rule, 31119. After receiving several objections, the FDA stayed the effective date for several provisions, including the rules governing which dairy products could be used to make yogurt. *Id.* "Due to competing priorities and limited resources," the FDA failed to address these objections during the ensuing 40 years, and these provisions never took effect. *Id.* at 31119-20.

3

In June 2021, the FDA published a proposed final rule to amend the standard of identity for yogurt, including provisions establishing "basic dairy ingredients." *Id.* at 31124. Chobani's sole objection to this rule was that it did "not allow for ultrafiltered milk to be used as a basic dairy ingredient." Ex.4, Response to Chobani Objection, 76561. The FDA overruled Chobani's objection. *Id.* at 76567. The FDA ruled that there was insufficient evidence that ultrafiltered milk was appropriate for yogurt and did not approve it as a "basic dairy ingredient." *Id.*; 21 C.F.R. § 131.200(b).

The exclusion of "ultrafiltered milk" from the "basic dairy ingredients" is the only reason Chobani needed a TMP; it had nothing to do with allulose.[1] Chobani's TMP application only asked for permission to deviate from the "basic dairy ingredients." Ex. 5, TMP Application. And that narrow relief was all that the FDA authorized. Ex. 6, TMP Approval, 18322-3 (Allowing Chobani to "deviate from the basic dairy ingredient provision of the yogurt standard of idenity.")

The TMP is a red-herring; it is irrelevant to Plaintiffs' claims. This case isn't about whether something made with ultrafiltered milk can be called "yogurt," it's about whether the yogurt can be pumped full of sugar and labeled "zero sugar."

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Bell Atl. Corp. v.*

---

[1] Indeed, a separate provision of the yogurt standard of identity specifically permits the use of sweeteners like allulose. *Id* §131.200(d)(2); Ex. 4, Response to Chobani Objection, 76565 ("we are modifying §131.200(d)(2) to permit "sweeteners" as optional ingredients in yogurt.").

4

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 366 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This Court "must accept as true all factual allegations in the ... complaint and draw all permissible inferences" in [plaintiffs'] favor. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) "Courts take a practical and fact-intensive approach" to allegations regarding deceptive food labels, and "how reasonable consumers understand a label is usually a question of fact not resolved on a motion to dismiss." *Calderon v. Procter & Gamble Co.*, No. 22-CV-3326, 2023 WL 3627797, at *6 (N.D. Ill. May 24, 2023) (quoting *Bell,* 982 F.3d., at 483).

### III.   ARGUMENT

#### A. Plaintiffs' Claims are not Preempted

The simplest reason to reject Defendant's preemption arguments is that the deceptive "zero sugar" statements at issue in Plaintiffs' state law claims are also impermissible nutrient content claims prohibited by FDA regulations. 21 C.F.R. § 101.60(c). There is no preemption when a food label is equally prohibited by both state and federal law. *Bell,* 982 F.3d, at 485-486.

In addition, Defendant's preemption arguments generally rely on the (i) 2020 Allulose Guidance ("Allulose Guidance") and (ii) TMP.  But courts have repeatedly rejected preemption arguments based on similar FDA documents. *Reid v. Johnson & Johnson*, 780 F.3d 952, 964 (9th Cir. 2015) (non-binding FDA guidance regarding

"enforcement discretion" does not preempt state law); *Bell*, 982 F.3d, at 486 (rejecting a preemption defense based on the issuance of a TMP).

### i. Allulose is a Sugar Under FDA Labeling Regulations

Defendant states that the FDA "does not consider allulose as a sugar for labeling purposes." Br. at 8. This is inaccurate. The Allulose Guidance confirms that "sugars like allulose" fall within the current regulatory definition of sugar. Ex. 7, Allulose Guidance, 2, 7; *see also* 21 C.F.R. § 101.9(c)(6)(ii). And the FDA subsequently confirmed that the Allulose Guidance did nothing to exempt allulose from the current regulatory definition of sugar and the related nutrient content claim regulations. Ex. 8, Request for Information, 66336, n.1; Ex. 1, Tagatose Ltr., 3.

In May 2022, 18 months after issuing the Allulose Guidance, the FDA confirmed in a separate guidance letter that the same regulatory definition of sugar was still in effect and applied with full force to allulose. The agency reiterated that, "as a foundational matter," it does "not have two different definitions of 'sugar' on food and beverage packaging," and that the regulatory definition continues to treat all mono-and disaccharides like allulose as sugar. Ex. 1, Tagatose Ltr., 4. ("our regulations at §101.9(c)(6)(ii), defined 'sugars,' and now define 'Total Sugars,' as the sum of all free mono- and disaccharides.").

The FDA further explained that, when issuing the Allulose Guidance, it intentionally decided ***not*** to exempt allulose from the general regulatory definition of sugar. *Id.* at 5 ("while we issued an enforcement discretion guidance regarding allulose's inclusion in the Added Sugars declaration, we declined at that time to

6

amend our regulations to exempt allulose from the Added Sugars declaration.") This regulatory definition of sugar has not been amended or suspended, and is still in full force and effect. *Id*.

### ii. Chobani's New Label Also Treats Allulose as a Sugar

Even Chobani has begun to treat allulose as a sugar in recent changes made to its labeling. As detailed at length in the Complaint, one of the reasons that Chobani's label violated the FDA's "zero sugar" nutrient content claim regulations was because it failed to identify allulose as a sugar with an asterisk in the ingredient list, as required by 21 C.F.R. 101.60(c)(1)(ii). Compl. ¶¶75-85. Chobani has recently changed this, and its new label (including the version attached to the TMP Application) now includes an asterisk identifying allulose as a sugar. Ex. 5, TMP Application.[2]

Here is a comparison showing the recent addition of the sugar asterisk:

Allulose not Identified as a Sugar

Allulose Identified as a Sugar

| Original Label (*See* Complaint ¶ 78) | Revised Label (*See* Ex. 5, TMP Application at 8-9) |
| --- | --- |
| **Ingredients:** Ultra-filtered nonfat milk, water, skim milk†, allulose, contains 2% or less of: natural flavors, tapioca flour, citrus fiber, vegetable juice concentrate (for color)†, guar gum, sea salt, stevia leaf extract (reb m), monk fruit extract, citric acid, enzyme, cultures. †Includes a dietarily insignificant amount of sugar. | **Ingredients:** Ultra-filtered nonfat milk**, water, skim milk†, allulose†, contains 2% or less of: vanilla extract, natural flavors, tapioca flour, citrus fiber, guar gum, sea salt, stevia leaf extract (reb m), monk fruit extract, citric acid, cultures. **Ingredient not found in regular yogurt. †Includes a dietarily insignificant amount of sugar. |

---

[2] *See also* use of the new label on Chobani's website at
*https://www.chobani.com/products/yogurt/zero-sugar/strawberry-cup*

It is a violation of FDA regulations to use a "zero sugar" nutrient content claim unless **both** prongs of § 101.60(c)(1)(i)-(ii) are met. By changing its label to add a sugar asterisk for allulose, Defendant has conceded that the original version of its label (the one bought by Plaintiffs and described in the Complaint) violated the second prong. §101.60(c)(1)(ii). This alone defeats preemption. *Bell,* 982 F.3d, at 486.

And if allulose "is a sugar" for purposes of §101.60(c)(1)(**ii**), as Chobani now admits, it is also a "sugar" for purposes of §101.60(c)(1)(**i**). The addition of a sugar asterisk to the label does nothing to change the fact that the product contains at least four grams of sugar per serving; eight times more than the FDA's 0.5 gram threshold for "zero sugar" nutrient content claims. §101.60(c)(1)(i). Thus, the new version of the label continues to violate the first prong of the FDA's "zero sugar" regulations.

### iii.  Plaintiffs' Claims do not Conflict with the Allulose Guidance

"The FDCA's preemption provision means that, while states may not require sellers to *add* further labeling that is not required by federal law, they may prevent sellers from voluntarily adding deceptive content that is not required by federal law." *Bell*, 982 F.3d., at 485 ("Plaintiffs' '100%' claims are thus not preempted.").[3]

The deceptive "zero sugar" nutrient content claims at issue in this case are not required by the Allulose Guidance or anything else. Nutrient content claims are **always** voluntary; they are **never** required under FDA regulations. 21 C.F.R. §

---

[3] Defendant relies heavily on a case, *Turek v. Gen. Mills, Inc.*, 662 F.3d 423 (7th Cir. 2011), that is inapposite. In *Turek*, the plaintiffs argued that state law required the defendants to *add* warnings on its label that were not required by the FDA. *Id.* at 427. That is the opposite of what Plaintiff is claiming in this case. Here the Plaintiff is not saying Chobani needs to add anything to its label; rather, that part of the label voluntarily added by Defendant is violative of state laws. Such claims are routinely allowed. *See, e.g., Bell.*

8

101.13(b). And the Allulose Guidance itself is strictly limited to "declarations" made within the Nutrition Panel box. Ex. 7, Allulose Guidance, 5, 8. It says nothing at all about "zero sugar" or any other nutrient content claims. *Id.*

Indeed, the Allulose Guidance does not require Defendant to do ***anything***. It begins with a prominent disclaimer stating that it is "not binding" and "[y]ou can use an alternative approach if it satisfies the requirements of the applicable statutes and regulations." Ex. 7, Allulose Guidance, 1. And every subsequent page notes that it "***Contains Nonbinding Recommendations***." *Id.*, *passim* (emphasis in original). While Defendant puts much weight on the FDA's use of the word "should" in the Allulose Guidance, (Br. at 1,4,5,10,13) the FDA clearly states that when it uses the word "should" in the guidance it "means that something is suggested or recommended, ***but not required***." Ex. 7, Allulose Guidance, 2 (emphasis added).

This is fatal to Defendant's preemption defense. *Bell*, 982 F.3d., at 481. In *Bell,* the defendant Kraft was sued for labeling its product "100% Grated Parmesan Cheese", even though it contained cellulose powder and potassium sorbate. *Id.* Kraft argued that these claims were preempted because the FDA's standard of identity for "grated cheeses" allowed the use of these ingredients. *Id.* The 7th Circuit unequivocally rejected this defense, explaining that "nothing in the standard of identity says whether products named 'Grated Parmesan Cheese' may be labeled with an additional modifier such as "100%." *Id.,* at 484. Noting that "it is defendants' labels, not plaintiffs' claims, that depart from the standard of identity," the *Bell* court

9

held that state consumer protection laws "may prevent sellers from voluntarily adding deceptive [label] content that is not required by federal law," *Id.*[4]

*Bell* is on all fours. Just as Kraft was not required to add "100%" to its "grated cheese" label, Chobani is not required to add "Zero Sugar" to its yogurt label. Plaintiffs are "not seeking to *add* labeling requirements," rather they "seek only to stop defendant[] from voluntarily adding deceptive language to the federally permitted labels." *Id.* Plaintiffs are not suing over any of the declarations made within the Nutrition Panel, they are suing over the voluntary "Zero Sugar" claims prominently displayed on the front of the label. See *id.* at 481 ("We have no quarrel with defendants' ability to call their products "grated cheese." The problem lies in the "100%."); *see also Schneider v. Mott's LLP,* No. 3:21-CV-1251-NJR, 2022 WL 4314207, at *6 (S.D. Ill. Sept. 19, 2022). *Bell*'s ruling is dispositive and controlling.

Authority from other Circuits is in accord. In *Reid*, the 9th Circuit considered similar non-binding FDA "enforcement discretion" guidance and held that it could not preempt state law. *Reid,* 780 F.3d. at 965. The 9th Circuit was "not convinced that Congress intended for an FDA pronouncement like that set forth in the 2003 letter to have the binding and exclusive effect of federal law," and expressed concerns that "allowing the FDA effectively to authorize health claims by way of statements of its

---

[4] Defendant's reliance on *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) is misplaced. As the *PLIVA* court itself acknowledged, "different federal statutes and regulations may ... lead to different preemption results." *Id.*, at 626. *PLIVA* dealt with the highly distinguishable "ongoing federal duty of sameness" that applies to the manufacture of generic drugs. *Id.*, at 613. Under this regime, drug manufacturers do not draft their products' initial labeling and do not have the power to revise labeling. *Hardeman v. Monsanto Co.,* 997 F.3d 941, 958–59 (9th Cir. 2021).

enforcement policy" would impermissibly "place those authorizations beyond judicial review." *Id.*; *see also Moore v. Mars Petcare US, Inc.*, No. 16-CV-07001-MMC, 2021 WL 6063577, at *2 (N.D. Cal. Dec. 22, 2021) (holding that non-binding FDA guidance does not preempt state law where the guidance "does not establish any legally enforceable responsibilities, and is not binding on either the FDA or the public.")

### iv.  The FDA Did Not "Approve" Defendant's Label

Defendant states that the "FDA approved Chobani Zero Sugar Yogurt Labels" by issuing a temporary marketing permit ("TMP"). Br. At 5.  This is inaccurate.

"Under FDA's laws and regulations, FDA does not pre-approve label for food products." Ex. 2, FDA Labeling Guidance, 4. There is no exception to this rule for TMP applications, and the FDA's TMP guidance is clear that when a company is issued a TMP, it remains "responsible for ensuring" that its labels comply with the FDA's "labeling regulations at 21 CFR part 101." Ex. 9, TMP Guidance, 6. TMPs are limited by law to deviations from standards of identity only, and nothing in 21 C.F.R. §130.17 allows the FDA to grant exceptions to nutrient content claim regulations.

The *Bell* court rejected the same TMP argument Defendant makes here. In *Bell*, the defendant applied for and received a TMP allowing it to sell parmesan cheese that deviated from the FDA's standard of identity. *Bell*, 982 F.3d. at 485-6.  As in this case, the *Bell* defendant's TMP application included a copy of the product's label. *Id.* at 495; Ex. 5, TMP Application. The defendant argued that because the FDA had approved the TMP, it had necessarily approved the label included with the TMP. *Id.* at 485-6. The court disagreed. "There is no indication in these permits that the FDA assessed whether Kraft's proposed '100% Grated Parmesan Cheese' label was

11

nondeceptive under federal law, and certainly not that it approved the 100% claim." *Id.* at 486.

As in *Bell*, the TMP issued to Chobani has nothing to do with Plaintiffs' claims. *Bell*, 982 F.3d. at 484. The TMP was narrowly crafted, and its sole purpose was to permit Chobani to market "test products" that "deviate from the basic dairy ingredient provisions [of] 21 CFR 131.200(b)" because they contain "ultrafiltered milk." Ex. 6, TMP Approval, 18322. This does nothing to preempt Plaintiffs' claims that the "zero sugar" nutrient content claims are false and deceptive. *Bell*, 982 F.3d. at 484; *see also Hendricks v. Starkist Co.,* No. 13-CV-729 YGR, 2014 WL 5144551, at *2 (N.D. Cal. Oct. 13, 2014) ("the Court does not attach any great significance to the FDA's grant of a TMP").

Furthermore, Chobani's TMP wasn't even sought until January 2023, wasn't granted until March 23, 2023, and in its TMP application Chobani ***used a different version of the label*** that added a sugar asterisk when listing allulose in the ingredient list.[5] Ex. 5, TMP Application. It is irrelevant to Plaintiffs' claims. *Id.*; *see also In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1090 (C.D. Cal. 2017).

### B. Consumer Fraud "Safe-Harbor" Exceptions do not Apply

Defendant's safe-harbor arguments fail for the same reason as its preemption arguments: the FDA never "specifically authorized" Chobani's "zero sugar" nutrient content claim. *Bell*, 982 F.3d. at 486 ("Safe harbor provisions like these do not

---

[5] The TMP application did not disclose to the FDA how ***much*** allulose was in the product, and it was impossible for the FDA to even determine, let alone approve, whether the label complied with the 0.5 g/serving sugar threshold under 21 CFR 101.60(c)(1)(i).

12

foreclose the plaintiffs' claims because, again, the FDA did not authorize the defendants' '100% Grated Parmesan Cheese' label as nondeceptive.")

The 7th Circuit has also held that similar nonbinding FDA guidance does not support a safe-harbor defense. In *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730 (7th Cir. 2019), the court addressed "nonbinding" FDA guidance that had the same disclaimers as the Allulose Guidance. The *Vanzant* court held that safe-harbor defenses do not apply to FDA guidance that "does not establish any legally enforceable responsibilities" and "is not binding on either the FDA or the public." *Id.* at 737. That's the case here, and Defendant's safe-harbor defense must be rejected for the same reasons. *Id*; *see also Price v. Philip Morris, Inc.,* 848 N.E.2d 1, 36 (2005) ("Conduct is not specifically authorized merely because it has been passively allowed to go on for a period of time.")

## C. The Primary Jurisdiction Doctrine Does Not Apply

This Court should not voluntarily abstain from addressing plaintiffs' claims under the "primary jurisdiction" doctrine because (i) district courts are well-equipped to consider consumer fraud claims, and (ii) it is unclear when, if ever, the FDA will take any action that would have any bearing on this case. *Chavez v. Church & Dwight Co.,* No. 17 C 1948, 2018 WL 2238191, at *8 (N.D. Ill. May 16, 2018).

"This case primarily concerns allegations of false and misleading representations, the sort of allegations that district courts routinely address." *Curran v. Bayer Healthcare LLC*, No. 17 C 7930, 2019 WL 398685, at *3 (N.D. Ill. Jan. 31, 2019) (quoting *Chavez*, 2018 WL 2238191, at *8); *see also Biffar v. Pinnacle Foods*

13

*Grp., LLC,* No. 16-0873-DRH, 2016 WL 7264973, at \*2 (S.D. Ill. Dec. 15, 2016) (district courts are "well-suited to entertain ... consumer fraud case[s]"); *Paschoal v. Campbell Soup Co.*, No. 21-CV-07029-HSG, 2022 WL 4280645, at \*5 (N.D. Cal. Sept. 15, 2022) ("Courts routinely decline to invoke the primary jurisdiction doctrine in food labeling cases"); *Chavez,* 2018 WL 2238191, at \*8 (same).

There is also no indication that the FDA will take any relevant action in the foreseeable future. The FDA has stated that it is not actively considering any changes to the nutrient content claim regulations for sugars like allulose, and does not plan to until some unspecified future date when "time and resources permit." Ex. 8, Request for Information, 66336. n.1. As detailed in the Complaint, there is no reason to think that this will happen anytime soon. Compl ¶¶ 107-109. This weighs strongly against issuing a stay in this case. *Chavez,* 2018 WL 2238191 at \*8 ("The problem with issuing a stay on this basis is that there is no indication of when, if ever, the FDA will act."); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015) ("primary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make.")[6]

This Court should also reject Defendant's abstention arguments because there "is no guarantee" that any future FDA action "would squarely address the issues raised in this litigation." *Chavez,* 2018 WL 2238191 at \*8. In a 2020 Request for

---

[6] Even if the FDA acted soon and promulgated guidance that would govern the analysis in this case, any such action would still be subject to a lengthy objection process. *See Advanced Dermatology v. Fieldwork, Inc.*, 550 F. Supp. 3d 555, 571–72 (N.D. Ill. 2021). For example, after promulgating a proposed standard of identity for yogurt in 1981, the process of addressing objections delayed the effective date for the regulation for over **40 years**. Ex. 3, FDA Final Yogurt Rule, 31119-20.

14

Information, the FDA articulated numerous approaches that it may take with respect to future regulations governing total sugar declarations made inside the Nutrition Panel. Ex. 8, Request for Information, 66338. Most of these approaches would still treat allulose as a sugar. *Id*. Defendant's unsupported guesses about things the FDA might do in the future do not prevent this Court from addressing Plaintiffs' claims regarding conduct that has already occurred. *Burton v. Hodgson Mill, Inc.*, No. 16-CV-1081-MJR-RJD, 2017 WL 1282882, at *8 (S.D. Ill. Apr. 6, 2017) ("The FDA's eventual formal definition has no bearing on a reasonable consumer's perception at the time this product was advertised and purchased."); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.,* 497 F. Supp. 3d 552, 581 (N.D. Cal. 2020) (same).

### D. Plaintiffs Adequately Allege that the Labels are Deceptive

Defendant asks this Court to rule, as a matter of law, that a reasonable consumer who comes across a giant "Zero Sugar" label could never be deceived into believing that the product actually has zero sugar. Br. at 11-13. The Court should reject this argument.

Plaintiffs allege in the Complaint that "allulose is a sugar" and that Defendant's label misled them as to the presence of sugar in the product. Compl. ¶¶ 8 -11, 35; see *also id*. ¶ 114 ("a reasonable interpretation of the labels: (a) "zero sugar" and (b) "no sugar" is that the labeled food actually has: (x) zero sugar and (y) no sugar"). That is sufficient to survive dismissal on the pleadings. *Bell*, 982 F.3d. at 483 ("How reasonable consumers actually understand defendants' "100% Grated Parmesan Cheese" labels is a question of fact that cannot be resolved on the

15

pleadings."); *Calderon*, 2023 WL 3627797, at *6 ("same"); *Biffar*, 2016 WL 7429130, at *3 (same); *Schneider*, 2022 WL 4314207, at *6 (same); *Reid*, 780 F.3d. at 958 (same)

Defendant argues at length that it would be "confusing" if the FDA's enforcement discretion permitted Chobani to declare "0g" Total Sugars inside of the Nutrition Panel while other regulations prohibit "Zero Sugar" nutrient content claims elsewhere on the package. Br. at 9, 12, 15. But this distinction is expressly built into FDA regulations. 21 C.F.R. § 101.13(c); *Reid*, 780 F.3d at 960 ("While a required statement inside a nutrition label escapes regulations reserved for nutrient content claims, the identical statement outside of the nutrition label is still considered a nutrient content claim); *Hawkins v. Kroger Co.*, 906 F.3d 763, 770 (9th Cir. 2018) ("The rules that govern claims made within the Nutrition Facts Panel and the rules that govern nutrition content claims elsewhere on the label are different."); *Porter v. NBTY, Inc.*, No. 15 CV 11459, 2019 WL 5694312, at *2 (N.D. Ill. Nov. 4, 2019) (same). Thus "a requirement to state certain facts in the nutrition label is not a license to make that statement elsewhere on the product." *Reid*, 780 F.3d, at 960. [7]

### E. Jurisdiction and "Out of State" Claims

Defendant's attack on Plaintiffs' ability to assert "out of state" claims conflates three distinct legal issues, none of which support dismissal. First, none of Defendant's personal jurisdiction arguments apply to the claims of unnamed putative class

---

[7]As discussed *supra* at pp. 8-9, Defendant is ***not*** required to exclude allulose when making its total sugars declaration within the Nutrition Panel. And Defendant is expressly prohibited from making "zero sugar" nutrient content claims on the front of the label. 21. C.F.R. § 101.60(c)(1). Defendant's dismissal arguments are thus even weaker than those addressed in *Bell,* where the "100%" claim was not required to be on the label by the FDA, but was also not expressly prohibited. *Bell* at 483.

members. *Mussat*, 953 F.3d at 447. Second, Defendant's standing argument is actually a disguised attack on Plaintiffs' ability to satisfy FRCP 23, and should be addressed at a later time during the class certification process. *Acosta-Aguayo v. Walgreen Co.*, No. 22-CV-00177, 2023 WL 2333300, at *8 (N.D. Ill. Mar. 2, 2023). Third, Defendant has consented to general personal jurisdiction in Illinois by registering to do business as a foreign LLC. *Mallory*, 143 S. Ct. at 2039.

### i. Bristol-Meyers Squibb Does Not Apply to the Claims of Unnamed Class Members

Defendant cites outdated law for the proposition that *Bristol-Meyers Squibb,* 582 U.S. 255 (2017), bars all claims by any non-Illinois plaintiff. Br. at 13. But this ignores an important distinction. There is overwhelming consensus, including controlling 7th Circuit authority, that *Bristol Meyer Squibb*'s personal jurisdiction rules do not apply to unnamed putative class members in FRCP 23 class actions. *Mussat,* 953 F.3d. at 447; *Lyngaas v. Ag*, 992 F.3d. 412, 434–35 (6th Cir. 2021); *see also Leszanczuk v. Carrington Mortg. Servs., LLC*, No. 19-CV-3038, 2020 WL 1445612, at *2 (N.D. Ill. Mar. 25, 2020) ("'unnamed class members are not required to' 'demonstrate either general or specific personal jurisdiction.'"). This authority is dispositive and fatal to Defendant's arguments.

### ii. Named Illinois Plaintiffs Have Article III Standing

Chobani argues that Plaintiffs lack Article III standing to assert claims under other states' consumer protection laws. Br. at 14. This argument has been rejected by the 7th Circuit. *Morrison v. YTB Int'l, Inc.,* 649 F.3d 533, 536 (7th Cir. 2011) ("If the Illinois Consumer Fraud Act law does not apply because events were centered

17

outside Illinois, then plaintiffs must rely on some other state's law; this application of choice-of-law principles has nothing to do with standing").

Defendant relies heavily on *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CV 3690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013). But this case is a clear outlier, and courts in this District have rejected it. *See, e.g., Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *7 (N.D. Ill. Aug. 1, 2018) (rejecting *Dairy* as contrary to the "weight of recent authority"); *Bonahoom v. Staples, Inc.*, No. 20-CV-1942, 2021 WL 1020986, at *2 (N.D. Ill. Mar. 17, 2021) (distinguishing *Dairy* and collecting cases). "In actuality," Defendant is challenging Plaintiffs' ability to act as class representatives under FRCP 23, and the well-established "best course is to defer this issue to the class certification stage." *Bojko v. Pierre Fabre USA Inc.,* No. 22 C 6728, 2023 WL 4204663, at *3 (N.D. Ill. June 27, 2023). "The prevailing view, particularly recently, is that the issue is best framed through the class-certification lens, not standing." *Clark*, 2023 WL 4351464, at *6.

### iii. Defendant has Consented to Illinois Jurisdiction

Chobani made an active choice when it decided to register as a business and deceptively market this product in Illinois. The Supreme Court's recent *Mallory* ruling and its progeny, most notably Chief Judge Pallmeyer's recent opinion in *In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prod. Liab. Litig.*, No. 22 C 02011, 2023 WL 4976182 (N.D. Ill. Aug. 3, 2023), establish that in doing so Chobani consented to general personal jurisdiction in this state.

*Mallory* construed the Pennsylvania long-arm statute and held that foreign corporations consented to general personal jurisdiction by registering to do business

18

in that state. *Mallory*, 143 S. Ct. at 2032. The *Mallory* court left open the question of whether registration laws in other states also establish jurisdiction by consent. *Id.* at 2033. This open question was directly answered in *Abbott*. The *Abbott* court examined Missouri statutes that are strikingly similar to their Illinois analogs. In a detailed and well-reasoned opinion, the court ruled that these statutes establish general personal jurisdiction over registered foreign corporations even absent express use of the word "consent."[8] *Abbott,* 2023 WL 4976182, at *3.

The Missouri statutes at issue in *Abbott* are nearly identical to Illinois law. Both states require foreign corporations to file an application for authority with the respective secretaries of state before transacting business. *Compare* Mo. Ann. Stat. § 351.572 *with* 805 ILCS 5/13.10. Both states bestow registered foreign corporations with the "same but no greater rights" and privileges as a domestic corporation, and subject registered foreign corporations "to the same duties, restrictions, penalties, and liabilities" as a domestic corporation. *Id.* When registering, Chobani "submitted" a "statement" appointing the Illinois Secretary of State as Chobani's agent for service of process. 805 ILCS 180/45-5(a)(8). These statutes establish Chobani's "consent to suit" in this Court. *Abbott,* 2023 WL 4976182, at *3.

In reaching this result, the *Abbott* court distinguished a 2017 ruling by the Missouri Supreme Court holding that a foreign corporation does not consent to general personal jurisdiction by registering to do business. *Id.*; *see also Dolan*, 512 S.W.3d at 52. The *Abbott* court explained that *Mallory* "challenges the very

---

[8] *See, e.g., State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 52 (Mo. 2017) ("The plain language of Missouri's registration statutes does not mention consent.")

19

foundation of *Dolan*," and held that *Dolan* had essentially been abrogated and was no longer controlling. *Abbott,* 2023 WL 4976182, at *3.

There is similarly outdated authority in Illinois. In 2017 the Illinois Supreme Court echoed the *Dolan* court's ruling that registration of foreign corporations does not create general personal jurisdiction. *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 90 N.E.3d 440, 447 (2017). The *Aspen* court expressly relied on *Dolan* to justify its ruling, and *Mallory* "challenges the very foundation" of *Aspen* to the same extent as *Dolan. Abbott,* 2023 WL 4976182, at *3. *Aspen, Dolan* and similar pre-*Mallory* authority do not apply to Chobani's consent under current law.[9]

## IV.    COUNTS 41, 42 AND 43 ALL SURVIVE

Count 42 (Unjust Enrichment) survives to the same extent as Counts 1-40, and should not be dismissed for the same reasons.  *Chavez*, 2018 WL 2238191, at *11. Defendant has not moved to dismiss Counts 41 or 43.

## V.    CONCLUSION

For the foregoing reasons Defendant's Motion to Dismiss should be denied.

---

[9] The *Mallory* opinion is also consistent with prior authority from this District and Circuit. *See, e.g. R.R. Donnelley & Sons Co. v. Jet Messenger Servs., Inc.*, 2004 WL 1375402, at *4 (N.D. Ill. May 25, 2004) ("a corporation has consented to be sued in the forum where it designates an agent to receive service of process."); *Consumer Program Adm'rs, Inc. v. K.B. Parrish & Co., L.L.P.*, 2009 WL 4788681, at *3 (N.D. Ill. Dec. 9, 2009) (Defendant "waived its right to dispute personal jurisdiction" by "designat[ing] an agent in Illinois for service of process"); *Employers Ins. of Wausau v. Banco De Seguros Del Estado,* 199 F.3d 937, 943 (7th Cir.1999) (same). These cases have been criticized as inconsistent with *Daimler AG v. Bauman*, 571 U.S. 117 (2014). In light of *Mallory*, Plaintiffs urge that this authority deserves a second look.

20

Dated: September 18, 2023

Respectfully submitted,

/s/ Yates M. French

Yates M. French
Amanda Zannoni
Heather L. Kramer
Rathje Woodward LLC
300 East Roosevelt Road. Suite 300
Wheaton, Illinois 60187
Phone: 630-668-8500
Emails:yfrench@rathjewoodward.com
azannoni@rathjewoodward.com
hkramer@rathjewoodward.com

Alexander H. Burke
Burke Law Offices, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Phone: (312) 729-5288
Email: ABurke@BurkeLawLLC.com

## CERTIFICATE OF SERVICE

I, Yates M. French, an attorney, certify that I caused a copy of the foregoing to be served via ECF on all counsel of record this 18th day of September, 2023:

*/s/ Yates M. French*