**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JASON FRANCO, ABIGAIL FRANCO,
MISTY M. LACY, and JOHN D. BAKER
individually and on behalf of all other similarly
situated class and subclass members,

        Plaintiffs,

v.

CHOBANI, LLC,

        Defendant.

Case No. 1:23-cv-3047

Honorable John J. Tharp, Jr.

**CHOBANI, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

## I.  INTRODUCTION

Plaintiffs' opposition is premised on two fundamental errors: (1) they ignore that nutrient content claims for sugar (such as "Zero Sugar") are governed by a *specific* regulation under which Chobani's Zero Sugar label is plainly permitted; and (2) they mischaracterize FDA's TMP approval process for Chobani's Zero Sugar label.  Once those distortions are resolved, the case for dismissal is straightforward.  Plaintiffs' belief that allulose must be labeled as a sugar and that products containing allulose cannot be labeled "Zero Sugar" directly conflicts with FDA's controlling and expert determination and fails to state a claim.  The Court should grant Chobani's motion to dismiss with prejudice.

## II.  ARGUMENT

### A.  Plaintiffs' State-Law Claims Are Preempted.

Plaintiffs' opposition barely acknowledges the regulatory reality that defeats their claims: FDA has addressed the labeling of products containing allulose—both through its Guidance to Industry and through its approval of Chobani's TMP for "Zero Sugar" yogurt.  Plaintiffs' attempt to avoid preemption by distorting and minimizing the legal significance of FDA's decisions fails.

### 1.  Plaintiffs Misconstrue FDA's Labeling Requirements.

Plaintiffs do not dispute that FDA has decided to permit manufacturers to exclude allulose from the amount of "Total Sugars" in their products and has stated that "allulose *should not* be included in the 'Added Sugars' declaration." *See* Motion to Dismiss ("Mot.") at 5; Ives Decl. Ex. A. at 11 ("Guidance").  Instead, Plaintiffs' opposition offers several theories for why FDA's assessment of allulose should not bar their claims.  None is persuasive.

*First*, Plaintiffs repeatedly assert that the Guidance is irrelevant because statements made in the Nutrition Facts Panel are not necessarily permissible as nutrient content claims.  *See* Pls. Opposition Brief ("Opp.") at 2 ("There are different regulations governing (i) mandatory

declarations contained within the well-known Nutrition Panel, and (ii) voluntary 'nutrient content claims.'"). Plaintiffs contend that the Guidance "is strictly limited to 'declarations' made within the Nutrition Panel box" and "says nothing at all about 'zero sugar' or any other nutrient content claims." Opp. at 9. But Plaintiffs ignore the *specific* regulation governing "Zero Sugar" claims.

While for some ingredients there are different regulations for the Nutrition Facts Panel and the front-of-pack nutrient content claims, for *sugar* the nutrient content claim regulation *expressly incorporates* the Nutrition Facts Panel definition of sugar. This means that the same definition applies to both the Nutrition Facts Panel declaration and sugar-related nutrient content claims. Mot. at 8–9; 11. The nutrient content claim regulation for sugar, 21 C.F.R. § 101.60(c)(1)(i), directs manufacturers to assess the amount of sugars in their product "as defined in [21 C.F.R. §] 101.9(c)(6)(ii)"—the Nutrition Facts Panel definition of sugar. This is where Plaintiffs' argument collapses. When making its "Zero Sugar" nutrient content claim, Chobani calculated the amount of sugar "as defined in 101.9(c)(6)(ii)" by following the express terms of the Guidance which allows manufacturers to *not* include allulose as a sugar. Ives Dec. Ex. A at 11. Chobani's "Zero Sugar" content claim thus fully complies with FDA's sugar nutrient content claim regulation. *See* 21 C.F.R. § 101.60(c)(1)(i).[1]

---

[1] Plaintiffs rely on a decision stating that "[t]he rules that govern claims made within the Nutrition Facts Panel and the rules that govern nutrition content claims elsewhere on the label are different." Opp. at 16 (*citing Hawkins v. Kroger Co.*, 906 F.3d 763, 770 (9th Cir. 2018)). But that decision addressed a different nutrient—trans fat—for which there was no authorized nutrient content claim. *See* 21 C.F.R. § 101.62; *Hawkins*, 906 F.3d at 771. The Ninth Circuit has limited *Hawkins* to "instances when the agency has authorized statements to appear in the NFP but has *declined* to authorize those statements elsewhere on the package." *Nacarino v. Kashi Co.*, 77 F.4th 1201, 1209 (9th Cir. 2023) (emphasis added). In this case, FDA *has* expressly authorized manufacturers to make sugar content claims using the Nutrition Facts Panel definition of sugar. 21 C.F.R. § 101.60(c)(1)(i).

*Second*, Plaintiffs suggest that a challenge to nutrient content claims can *never* be preempted because such claims are "always voluntary" and manufacturers are "never required" to make content claims. Opp. at 8 (emphasis omitted). Plaintiffs' view is clearly wrong on the law. Federal preemption bars state law claims that conflict with labeling that is *specifically authorized* by federal law, even if that labeling is not mandated. *See, e.g.*, *Stuve v. Kraft Heinz Co.*, No. 21-CV-1845, 2023 WL 184235, at *6 (N.D. Ill. Jan. 12, 2023) (when a label is "expressly permitted by FDA regulations, [p]laintiffs' [state] labeling claims are preempted") (simplified); *Savalli v. Gerber Prod. Co.*, No. 15-61554-CIV, 2016 WL 5390223, at *4 (S.D. Fla. Sept. 20, 2016) ("Conduct cannot be simultaneously permitted by the FDCA and prohibited by it."). The Ninth Circuit's decision in *Nacarino v. Kashi Co.*, 77 F.4th 1201 (9th Cir. 2023), is instructive. The court held that state-law claims challenging front-of-pack protein claims were preempted because FDA's nutrient content regulations "include[d] contrary language that directly addresse[d] the kind of deception that Plaintiffs allege[d]." *Id.* at 1211 (simplified). Here, "the kind of deception" Plaintiffs allege—that products with allulose contain harmful or disclosable amounts of sugar—conflicts with FDA's position that manufacturers do not need to consider allulose as a sugar on their labels. Because Plaintiffs are seeking to hold Chobani liable under *state* law for making a nutrient content claim that is expressly authorized under *federal* law, their claims are preempted. *Bell v. Publix Super Markets* does not hold otherwise. The claim at issue in *Bell*—"100% Grated Parmesan Cheese"—was not addressed by or specifically authorized by FDA regulations, whereas Chobani's "Zero Sugar" claim *is* expressly authorized by § 101.60(c)(1). *See* 982 F.3d 468, 483–84 (7th Cir. 2020). That is a fundamental and legally dispositive distinction.

*Third*, Plaintiffs contend that FDA's guidance specifically addressing the labeling of *allulose* has been superseded by a letter responding to a citizen petition about *tagatose*, an entirely

3

different sugar substitute. Opp. at 6–7. That tagatose letter says FDA has determined that tagatose does not have the same properties as allulose and should not be treated the same as allulose for the purposes of labeling—demonstrating that FDA is carefully reviewing how each sweetener should be labeled. Nothing in the letter contradicts or rescinds FDA's guidance about allulose. Plaintiffs cite FDA's statement that "our regulations at §101.9(c)(6)(ii), defined 'sugars,' and now define 'Total Sugars,' as the sum of all free mono- and disaccharides" and that it has "declined . . . to amend our regulations to exempt allulose from the Added Sugars declaration." Pls. Ex. 1 at 5. But Chobani has never claimed that FDA has formally issued a new regulation amending the definition of sugar. Chobani's position has always been that FDA's guidance on allulose expressly permits manufacturers not to consider allulose as a sugar on their labels under *existing* regulations. Ives Dec. Ex. A (FDA Guidance) at 11.

In short, Plaintiffs' complaint contradicts FDA's approach to allulose labeling. These are precisely the circumstances where preemption is required. When a plaintiff's claims "are not identical to the labeling requirements imposed on [] products by federal law . . . they are barred." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011).[2]

### 2.    Chobani's TMP Specifically Authorized The Use Of Allulose.

Plaintiffs also argue that the Court should ignore FDA's determination in the TMP approving Chobani's "Zero Sugar" product. Plaintiffs mischaracterize the TMP application. Plaintiffs say the TMP "has nothing to do with Plaintiffs' claims" because the "sole purpose" of

---

[2] There is no federal private right of action to enforce the FDCA. *See* 21 U.S.C. § 337(a). Because FDA is the only party authorized to sue under the FDCA and has stated that allulose should not be labeled as a sugar, the FDCA cannot be reinterpreted by private plaintiffs through a state-law consumer case. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021) ("Private plaintiffs are not accountable to the people and are not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law.").

the TMP was to allow Chobani to use its yogurt labels "because they contain ultrafiltered [nonfat] milk." Opp. at 12. This is clearly wrong based on the plain terms of Chobani's TMP application and FDA's TMP approval.

In Chobani's TMP application, Chobani stated that "[t]he test products deviate from the . . . standards of identity through the utilization of ultrafiltered nonfat milk . . . *and through the addition of water and non-nutritive sweeteners*." Ives Decl. Ex. B. at 3 (as reflected in ECF No. 21) (emphasis added). Chobani explained that it was using the "non-nutritive sweetener[] allulose." *Id.* at 4. Chobani needed a TMP to use allulose because the yogurt standard of identity only permitted "nutritive carbohydrate sweeteners." *Final Rule To Amend the Standard for Yogurt*, 86 FR 31117-01, at 31118, 31127–28 (June 11, 2021) (rule effective July 12, 2021 through Jan. 16, 2023). FDA's TMP approval expressly stated: "This temporary permit would allow the applicant to manufacture yogurts using ultrafiltered nonfat milk as a basic dairy ingredient *through the addition of water and non-nutritive sweeteners*." Ives Decl. Ex. C at 3 (emphasis added). Thus, FDA's approval of Chobani's "Zero Sugar" TMP *authorized* the use of allulose as a nonnutritive sweetener in conjunction with ultrafiltered nonfat milk and the "Zero Sugar" label.

Chobani also asked FDA to approve its "Zero Sugar" labels as required by the TMP regulation. *See* 21 C.F.R. § 130.17(c)(9).[3] Chobani submitted "Proposed Labels for the Test Products Deviating from the Yogurt Standard of Identity." Ives Decl. Ex. B at 9–10. The labels prominently displayed "Zero Sugar" on the front of the pack and contained the statements: "This one-of-a-kind product has zero sugar," and "[w]e did it—we took the sugar out of the milk!" as

---

[3] The TMP regulation requires applicants to include in their application "[t]he proposed label (or an accurate draft) to be used on the food to be market tested." 21 C.F.R. § 130.17(c)(9). The FDA cannot approve the permit unless the label complies with the FDCA's labeling provisions (except for the standard of identity). *See id.* § 130.17(e).

well as "[w]e sweeten it with only natural sugar alternatives." *Id.* The label says "Zero Sugar" in multiple locations. *Id.* FDA approved Chobani's label when it authorized the TMP. 88 Fed. Reg. 18322-01 (Mar. 28, 2023).

Plaintiffs' reliance on *Bell* is (again) misplaced. Opp. at 11–12. *Bell* held that plaintiffs' claims challenging "100% Grated Parmesan Cheese" labels were not preempted by the fact that Kraft had received a TMP allowing it to market the product as "parmesan cheese" even though it was aged for six months rather than ten months as required by regulation. 982 F.3d at 485–86. The court found that there was no connection between Kraft's TMP and the "100%" claim because the TMP contained no analysis of the "100%" claim and thus there was "no indication" that FDA "approved the 100% claim." *Id.* at 486. But that is not the case here. The purpose of Chobani's TMP was to secure FDA approval to sell a "Zero Sugar" yogurt using ultrafiltered nonfat milk and nonnutritive sweeteners. Ives Decl. Ex. B. at 4. FDA granted Chobani regulatory approval to sell and market Chobani Zero Sugar yogurt with allulose. 88 Fed. Reg. 18322-01 (Mar. 28, 2023). Plaintiffs cannot reverse that regulatory approval. *See Turek*, 662 F.3d at 427.

For the same reason, Plaintiffs' claims are independently barred under the Illinois Consumer Fraud Act's safe-harbor provision. 815 Ill. Comp. Stat. Ann. 505/10b. Chobani's TMP specifically authorizes Chobani to use allulose in its "Zero Sugar" yogurt labels which constitutes specific federal authorization under *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 46 (Ill. 2005) ("informal regulatory activity" qualifies as specific federal authorization). As a result, Plaintiffs' claims are not permitted under ICFA and must be dismissed under ICFA's safe-harbor provision.

Finally, Plaintiffs suggest that Chobani "has begun to treat allulose as a sugar" because it submitted an updated "Zero Sugar" label during the TMP application process that included an asterisk next to the word allulose in the ingredient statement which is linked to a sentence that says

6

"includes a dietarily insignificant amount of sugar." Opp. at 7. Plaintiffs mistakenly argue that the inclusion in the TMP of an asterisk next to allulose shows that Chobani now regards allulose as a sugar. That is incorrect. As part of the TMP label review, FDA asked Chobani to include an asterisk next to allulose stating that it "adds a dietarily insignificant amount of sugar."[4] FDA expressly approved Chobani's "Zero Sugar" claim as a "nutrient content claim," and FDA's regulations specifically authorize the use of a "Zero Sugar" nutrient content claim on products that carry the asterisk.[5] 21 C.F.R. § 101.60(c)(1)(ii).

### 3. At Minimum, Uncertainty Over FDA's Regulations Requires A Stay.

If the Court does not dismiss Plaintiffs' claims as preempted, the Court should stay the case under the primary jurisdiction doctrine or the Court should refer these issues to FDA. Plaintiffs' own exhibits indicate that FDA is proceeding with the rulemaking process with respect to allulose. For example, Plaintiffs cite an FDA request for information asking whether there are "other factors" in addition to allulose's effects on "pH of dental plaque after consumption, caloric value, and glycemic and insulinemic response" that FDA should consider before formally adopting new regulations for allulose. Opp. at 14–15; Pls. Ex. 8 at 5. Plaintiffs also cite FDA's 2022 guidance

---

[4] *See* Reply Exhibit 1 at 4. Chobani's communications with FDA are appropriate for judicial notice because they are publicly available agency records and are subject to disclosure under the Freedom of Information Act. *See Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000) (collecting cases). Plaintiffs' counsel has filed a formal FOIA request to FDA requesting these documents. *See FDA FOIA Log – FY 2023*, Control No. 2023-5275 (July 20, 2023) (FOIA request from Plaintiffs' counsel seeking "all communications made or received by the FDA, regarding the product Chobani Zero Sugar yogurt") (available at https://www.fda.gov/regulatory-information/freedom-information/fda-foia-logs). Chobani's counsel provided a copy of these documents to Plaintiffs' counsel on September 5, 2023—before Plaintiffs filed their opposition.

[5] Plaintiffs' entire case is based on the purported "deception" that they saw Chobani's front-of-pack "Zero Sugar" labels, Compl. ¶ 49, and were deceived because the product actually contains sugar. Plaintiffs do not allege that they were deceived by the absence of an asterisk next to allulose in the ingredient statement on the back panel of the product. *See id.* at ¶¶ 75–85.

letter for tagatose, where FDA noted that it is *continuing* to consider whether to formally amend the regulations for allulose. Opp. at 6; Pls. Ex. 1 at 6. These documents illustrate that FDA is actively collecting new information in anticipation of regulatory action and contradict Plaintiffs' contention that there is "no indication" that FDA will take action on these issues in the foreseeable future. Opp. at 14. Given this regulatory landscape, it is appropriate for this Court to stay proceedings or refer the question directly to FDA if it does not grant Chobani's motion to dismiss. *See Taradejna v. Gen. Mills, Inc.*, 909 F. Supp. 2d 1128, 1135 (D. Minn. 2012) (granting motion to dismiss and referring question to FDA to determine whether "milk protein concentrate" is a permissible ingredient under the yogurt standard of identity because "FDA's ultimate decision on the permitted ingredients in yogurt will ensure national uniformity in labeling, utilizing the Agency's special expertise").

**B.      Plaintiffs Do Not State A Plausible Claim of Deception.**

Plaintiffs' theory of deception is that consumers are misled by Chobani's Zero Sugar label because (according to them) allulose is a sugar and reasonable consumers want to know if allulose is in their products. Of course, if consumers are especially concerned about allulose, they can look at the ingredient list, which plainly discloses allulose.

More importantly, FDA issued its guidance on allulose to *help consumers*, not deceive them. FDA has plainly stated that it adopted such guidance to "help consumers make more informed choices to consume a healthy diet." Ives Decl. Ex. A. at 9. To "assist consumers in maintaining healthy dietary practices," FDA focused on whether allulose is metabolized by the body, impacts blood sugar levels, or leads to dental caries. *Id.* FDA then determined that allulose has no tangible effect on the body in any of these areas and that consumers would not consider allulose as a sugar when making their food purchase decisions. *See id.* at 11.

8

Under the banner of protecting consumers, Plaintiffs' claims are doing them a disservice. As FDA made clear, consumers do not have specific expectations about the existence of "monosaccharides" in yogurt products. FDA has already addressed what consumers care about—weight gain, metabolic effects, glucose levels, and dental health. Allulose is a sugar substitute that has no impact on any of them. Plaintiffs' approach is counterproductive because it prevents consumers from easily identifying the type of no sugar products they seek to maintain healthy dietary practices. *See* Mot. at 12–13. As a result, Plaintiffs' theory of deception is implausible and ignores "how real consumers understand and react to the advertising." *Bell*, 982 F.3d at 476. Courts regularly dismiss consumer deception claims when dealing with implausible and confusing interpretations of a consumer label. *See id.* at 477.

This Court should reject Plaintiffs' implausible interpretation of Chobani's label and dismiss their consumer deception claims for failure to state a claim.

## C.      Plaintiffs' Remaining Arguments Fail to Salvage their Out-of-State Claims.

First, Plaintiffs concede that *Bristol-Myers* precludes the exercise of personal jurisdiction over Chobani with respect to the *named* out-of-state plaintiffs asserting out-of-state claims. *See* Opp. at 17 (arguing that *Bristol-Myers* does not apply to "unnamed putative class members"). And the Seventh Circuit decision they cite, *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020), solely addressed the personal jurisdiction requirements for *unnamed* out-of-state class plaintiffs, whereas this case includes *named* out-of-state plaintiffs asserting claims under the laws of other states. *See* Compl. ¶¶ 10, 11. As a result, the out-of-state named plaintiffs here must be dismissed because this Court does not have personal jurisdiction over Chobani with respect to their claims. *See Kurt v. Platinum Supplemental Ins.*, No. 19 C 4520, 2021 WL 3109667, at *7 (N.D. Ill. July 22, 2021) (discussing *Mussat* and dismissing the named out-of-state plaintiffs for failure to

9

establish personal jurisdiction over the defendant).  This Court should adopt the same approach and dismiss the named out-of-state plaintiffs.

Next, Plaintiffs attempt to rely on the Supreme Court's recent *Mallory* decision to argue they can establish general jurisdiction over Chobani.  Opp. at 18–20.  In *Mallory v. Norfolk S. Ry. Co.*, the Court held only that states *may* require corporations to consent to general jurisdiction by registering to do business in a state.  143 S. Ct. 2028, 2037–38 (2023).  But as Plaintiffs concede, the Illinois Supreme Court has already held that compliance with the state's business registration statute does *not* constitute consent to general jurisdiction.  *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 90 N.E.3d. 440, 447 (Ill. 2017).  This Court should reject Plaintiffs' request to rewrite the Illinois Supreme Court's interpretation of Illinois's business registration statute.

Finally, Plaintiffs fail to argue that any of the out-of-state plaintiffs (named or unnamed) can establish Article III standing.  Instead, they argue that Chobani has made a "disguised" Rule 23 argument that should be addressed at a later stage.  Opp. at 17–18.  But Article III standing is an independent requirement that Plaintiffs must establish to state a viable claim.  *Payton v. Cnty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) (parties should not "conflat[e] the standing inquiry with the inquiry under Rule 23").  As Chobani explained in its motion, courts routinely address standing at the motion to dismiss stage.  Mot. at 14.  It is especially appropriate to do so here where Plaintiffs have failed to put forward any argument in support of standing and injury-in-fact.

## III.  CONCLUSION

Chobani respectfully requests that the Complaint be dismissed with prejudice.  The regulatory history and Chobani's TMP cannot be disputed or changed.  Nor can Plaintiffs allege new facts that would salvage their claims.  Leave to amend is thus futile and should be denied.

10

Dated: October 23, 2023

Respectfully submitted,

By: /s/ *Andrew S. Tulumello*

Andrew S. Tulumello
**WEIL, GOTSHAL & MANGES LLP**
2001 M Street, N.W.
Washington, DC 20036
Telephone: (202) 682-7100
Facsimile: (202) 857-0940
drew.tulumello@weil.com

Erik J. Ives
**FOX, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 224-1239
Facsimile: (312) 224-1201
eives@foxswibel.com

*Counsel for Defendant Chobani, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on October 23, 2023, he caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which shall send notification of such filing to all counsel of record.

By: /s/ *Andrew S. Tulumello*

12