**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Jason Franco, Abigail Franco, and on behalf of all other similarly situated class members,<br><br>Plaintiffs,<br><br>v.<br><br>Chobani, LLC<br><br>Defendant. | **Case No. 1 :23-cv-03047**<br><br>**Hon. Judge John J. Tharp, Jr.**<br><br>**Hon. Magistrate Judge Gabriel A. Fuentes**<br><br>**JURY DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Jason Franco and Abigail Franco by and through their attorneys Rathje Woodward LLC, Burke Law Offices LLC and Reese LLP, for their class action complaint against Defendant Chobani, LLC ("Chobani" or "Defendant") state as follows:

## INTRODUCTION

1. This case is about the deceptive package labeling of CHOBANI ZERO SUGAR yogurt.

2. This product is sold in approximately 95,000 retail locations across the United States, including in Illinois. The package labeling looks like this:




3. Every serving of CHOBANI ZERO SUGAR yogurt is sweetened with 4 grams of allulose.

4. Allulose is a naturally occurring sugar found in figs, raisins, wheat, maple syrup and molasses.[1]

---

[1] Cleveland Clinic Health Essentials: https://health.clevelandclinic.org/what-is-allulose /#:~:text=Allulose%20is%20a%20naturally%20occurring,of%20sugar's%20well%2Ddocumented%20downsides. (footnote cont.)
*see also* https://www.medicalnewstoday.com/articles/326198#_noHeaderPrefixedContent ("Allulose is a type of

5. This is a straightforward case. Defendant has sold millions of containers of yogurt to unsuspecting consumers by telling them that it has "zero sugar" and "no sugar." As it turns out, CHOBANI ZERO SUGAR contains quite a lot of sugar. Selling Illinois consumers a food product that is intentionally mislabeled and intended to deceive them violates the Illinois Consumer Fraud and Deceptive Business Practices Act and gives rise to the related claims asserted below. It is also just plain wrong.

6. There is no such thing as "zero sugar" allulose; it doesn't exist. To peddle this contradiction in terms, Defendant deceived the public through misleading packaging statements and labels. This deception earned Chobani many millions of dollars while causing substantial harm to consumers, including consumers in Illinois.

7. This complaint seeks relief for Plaintiffs and the Illinois Class with regard to the Rule 23(c)(4) issue described below, and asserts causes of action for (i) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*., (ii) money had and received, (iii) unjust enrichment, and (iv) declaratory relief.

## **PARTIES**

8. Plaintiff Jason Franco resides in DuPage County, Illinois. He is a high school math teacher and soccer coach who purchased Chobani's deceptively labeled product while doing his family's grocery shopping in DuPage County. He saw the CHOBANI ZERO SUGAR product labeling, including the "zero sugar" and "no sugar" labels and statements while shopping for groceries at the Costco located at 1901 W. 22nd St., Oak Brook, Illinois. In reliance on these deceptive labels, he purchased the product in 2023 because he reasonably believed that it contained zero sugar.

---

sugar that resembles fructose, which is the sugar that occurs naturally in fruit.")

9. Plaintiff Abigail Franco resides in DuPage County, Illinois. She purchased CHOBANI ZERO SUGAR yogurt in 2023 while shopping for herself and her family at the Costco located 1901 W. 22nd St., Oak Brook, Illinois. She saw the CHOBANI ZERO SUGAR product labeling, including the "zero sugar" and "no sugar" labels and statements. In reliance on these deceptive labels, she purchased the product because she reasonably believed that it contained zero sugar.

10. Defendant Chobani, LLC is a Delaware limited liability company with its principal executive office in Norwich, New York. It is identified on the CHOBANI ZERO SUGAR package labeling as the manufacturer of the product.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over the case pursuant to the Class Action Fairness Act, 28 U.S.C. §1332, because the case is brought as a class action under Fed. R. Civ. P. 23.

12. At least one proposed Class member is of diverse citizenship from Defendant. Jason and Abigail Franco are citizens of Illinois, and Chobani is a citizen of Delaware and New York.

13. The proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars, excluding interest and costs.

14. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant engaged in substantial conduct relevant to Plaintiffs' claims within this District and has caused harm to Class members residing within this District.

## ALLEGATIONS OF FACT

### I. Defendant Has Deceptively Marketed and Labeled CHOBANI ZERO SUGAR Yogurt Across the Entirety of the United States

15. As set forth in more detail below, Defendant has engaged in a nationwide scheme to deceive consumers by selling them "zero sugar" yogurt that is actually made by adding sugar as a sweetener.

16. This deception was carried out intentionally in a bid to enrich Chobani and its owners.

17. And it largely worked; consumers across the country have been deceived into purchasing CHOBANI ZERO SUGAR based on the reasonable belief that it contains "zero sugar." These consumers reasonably relied on Chobani's deceptive product labels and statements, and suffered damage because they were cheated out of the benefit of the bargain they believed they were making when purchasing the product.

18. The scheme goes like this:

#### A. Chobani begins deceptively marketing CHOBANI ZERO SUGAR yogurt to boost profits in advance of a planned stock IPO.

19. Yogurt, the product of bacterial fermentation of milk, was discovered approximately 7,000 years ago. For the first 6,998 or so years, there was no such thing as "zero sugar" yogurt, because milk itself contains a fair amount of sugar in the form of lactose.

20. Fast forward to 2021: Chobani, which since its founding had been a privately held company, was contemplating an initial public offering ("IPO").

21. In order to maximize sales and obtain the largest possible profit from its IPO, Chobani introduced CHOBANI ZERO SUGAR into the marketplace.

22. It proclaimed on the product labeling: "We did it – we took the sugar out of the milk!" and "This one-of-a-kind product has zero sugar."

23. This was a big deal for Chobani. As its CEO explained, "CHOBANI ZERO SUGAR is the first nationally distributed product in the U.S. yogurt aisle [labeled] no sugar. You won't find another product on shelves nationwide in the U.S. dairy aisle with 11 grams of protein and only natural ingredients, but no sugar or artificial sweeteners."[2]

24. This was a deliberate marketing strategy meant to capitalize on consumer demand by misleading consumers. It is well known that consumers have expressed a strong desire for "zero sugar" or "no sugar" products as part of recent healthy eating trends; consumer reports have determined that over 70% of Americans are trying to limit or avoid sugars in their diet.[3] Likewise, consumers are wary of products containing artificial sweeteners.

25. Tricking consumers into believing that CHOBANI ZERO SUGAR actually contained zero sugar was also key to Chobani's strategy to grow sales, and was a key selling point when marketing the Chobani IPO to potential new shareholders.

26. Chobani filed its IPO "Form S-1" with the Securities and Exchange Commission[4] as part of its planned IPO. This document contains a general description of Chobani's businesses, and is used to entice potential shareholders to participate in the IPO and acquire Chobani stock.

27. The S-1 is replete with references to CHOBANI ZERO SUGAR, which is specifically identified as a key part of Chobani's "New Product Platform Innovation." The S-1 goes on to explain that "Chobani with Zero Sugar has significant opportunity for growth."

---

[2] *Chobani Launches Zero Sugar Line*, Dairy Foods, June 15, 2021, https://www.dairyfoods.com/articles/95078-chobani-launches-zero-sugar-line

[3] International Food Information Council, 2022 Food and Health Survey, May 18, 2022, https://foodinsight.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf

[4] U.S. Sec. & Exch Comm'n, Registration Statement, Chobani Inc. (2021) https://www.sec.gov/Archives/edgar/data/1869113/000095012321008491/filename1.htm.

28. For that reason, in its bid to increase profits in advance of the IPO, Chobani focused its marketing on the "zero sugar" and "no sugar" claims. The CEO of Chobani explained, in his own words, that "on the packaging, we're really homing in on the zero sugar".[5]

29. Here is an example of what "homing in" on zero sugar on the packaging looks like:




[5] Elaine Watson, *'We've Done Something Truly Disruptive' Chobani Launches Zero Sugar Yogurts An Industry First* Food Navigator, USA June 14, 2021, https://www.foodnavigator-usa.com/Article/2021/06/14/We-ve-done-something-truly-disruptive-Chobani-launches-zero-sugar-yogurts-an-industry-first




30. CHOBANI ZERO SUGAR is prominently labeled with statements claiming that it is "zero sugar," and has "no sugar." Additional examples of the deceptive labeling used to sell CHOBANI ZERO SUGAR are compiled and attached as Exhibit 1.

31. This is all a complete deception. In fact, CHOBANI ZERO SUGAR is sweetened by adding allulose to the yogurt.

**B. What is Allulose?**

32. Allulose is a sugar.

33. It is a naturally occurring sugar that sweetens things like raisins, maple syrup and brown sugar.[6]

[6] *A Clinical Study on the Effect of Allulose, a Low-Calorie Sugar, on in vivo Dental Plaque pH*, The Forsyth Inst., at p. 6 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar") (2018).

34. However, those food items must go through substantial commercial processing in order to become the allulose Chobani uses.

35. Chemically, allulose is a monosaccharide epimer of fructose.

36. Allulose and fructose are both sugar carbohydrates that differ in the position of a single carbon atom. To illustrate, here is a diagram laying out the general chemical composition of allulose and fructose: [7]




Chemical structures of (a) D-allulose, (b) D-fructose

37. As a monosaccharide, allulose falls squarely within the Food and Drug Administration ("FDA")'s codified definition of sugar. 21 C.F.R. § 101.9(c)(6)(ii). The Seventh Circuit has now confirmed that conclusion in this case: "Allulose is a sugar under the relevant federal regulation." *Franco v. Chobani, LLC*, 184 F.4th 599, 602 (7th Cir. 2026).

38. Consistent with that regulatory definition, the FDA for years required allulose to be included in labeling declarations for Total Sugars, and Added Sugars.[8]

---

[7] Han-Joo Maeng et al., 8 MDPI Journal 448, Foods, *Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol*, October 1, 2019, https://www.researchgate.net/figure/Chemical-structures-of-a-D-allulose-b-D-fructose-c-D-glucose-and-d-erythritol_fig4_336222515

[8] U.S. Food & Drug Admin, *FDA Issues Draft Guidance Regarding the Declaration of Allulose on the Nutrition Facts Label*, FDA.gov, Constituent Update, April 17, 2019,

39. The FDA is not the only organization that recognizes that allulose is a sugar. Tate & Lyle, the ingredient manufacturer responsible for the production of most commercial grade allulose,[9] has acknowledged in multiple FDA filings that "Allulose is a monosaccharide and is classified as a sugar." 4.10.15 Tate & Lyle Petition[10]; *see also* 8.13.18 Tate & Lyle Study[11] ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.")

40. Even the website "allulose.org" plainly states that "Allulose (also called psicose) is a low-calorie sugar."[12]

41. CHOBANI ZERO SUGAR yogurt with allulose is really just yogurt sweetened with sugar; its very name is a lie.

**C. There are important differences between consuming allulose and consuming "no sugar."**

42. Allulose has become popular with food manufacturers recently because some preliminary research suggests that it may metabolize in some people's bodies differently than some other sugars.

43. However, there are important caveats and exceptions to this ongoing research.

44. For example, while some studies have concluded that allulose has less harmful effects on the blood glucose level of healthy people when ingested and metabolized, those studies

---

9 Tate & Lyle's "Customer Innovation and Collaboration Centre" is in Hoffman Estates, outside Chicago, Illinois. This Illinois location is the "global headquarters of the Primary Products division" of Tate & Lyle, as well as its "North American headquarters for [its] Food & Beverage Solutions division." https://www.tateandlyle.com/contact-us

10 Citizen Petition Submitted by Tate & *Lyle Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages*, April 10, 2015, Docket Number FDA-2015-P-1201.

11 Tate & Lyle Study (Aug 13, 2013), Pg. 6, https://www.regulations.gov/document/FDA-2015-P-1201-0014

12 Calorie Control Council, Frequently Asked Questions, https://allulose.org/allulose-info/low-calorie-sugar/

have concluded that "dose difference of allulose may result in a different effect," "the effect may differ by race as well as gender," and "there might be a difference between a liquid form and a solid form" of allulose.[13] Studies have concluded that further research is also needed to "factor into effects [of] the timing of an intake and its ratio of allulose in a meal"[14] and experts have concluded that "more research needs to be done."[15]

45. Consumption of allulose can also have gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[16]

46. A large clinical trial conducted on gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in "significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain."[17] Increasing the level of ingested allulose "resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms."[18]

## II. Plaintiffs' Claims Are Not Preempted by the FDA's Allulose Guidance

47. Plaintiffs are suing for violation of statutory state law because they were tricked into buying a product deceptively labeled "zero sugar" and "no sugar" that is actually made by adding sugar as a sweetener.

48. Plaintiffs are not suing for any violation of FDA regulations.

---

[13] Tani Yuma et al., *Allulose for the attenuation of postprandial blood glucose levels in healthy humans: A systematic review and meta-analysis*, 18 PLos One 4, (2023) https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0281150

[14] *Id.*

[15] *Id.*

[16] Memorandum from Center for Science in the Public Interest to Food and Drug Administration (June 17, 2019) https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf

[17] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY, & Choi M.S., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial. Nutrients*., 2018 Dec 19;10(12):2010. doi: 10.3390/nu10122010. PMID: 30572580; PMCID: PMC6315886

[18] *Id.*

49. The Seventh Circuit has held that Plaintiffs' state-law claims are not expressly preempted on the theory that the FDA's Allulose Guidance excludes allulose from the federal definition of sugar. *Franco*, 184 F.4th at 602.

**A. Federal Law prohibits Chobani's "Zero Sugar" and "No Sugar" Labels**

50. Congress empowered the FDA to oversee and regulate food labeling by enacting the Food, Drug and Cosmetic Act, as amended by the Nutrition Label and Education Act. 21 U.S.C.A. § 301, *et seq*.

51. These statutes allow the FDA to enact and enforce formal regulations, which the FDA has codified at Title 21 C.F.R. § 100.1 *et seq*.

52. The FDA regulations draw a sharp distinction between two types of food label statements: (i) nutrition panel declarations and (ii) nutrient content claims.

53. The FDA has established the well-known "nutrition panel," and tightly controls exactly what declarations may, and may not, appear within the four walls of this panel. *See, e.g.* 21 C.F.R. § 101.9

54. None of Plaintiffs' claims relate to or depend on any declaration made within the nutrition panel of CHOBANI ZERO SUGAR yogurt.

55. At issue in this case are the separate, deceptive, "nutrient content claims" that Chobani has plastered all over the packaging labels outside of the nutrition panel.

**B. CHOBANI ZERO SUGAR Is Misbranded Because the Food Labeling Contains Impermissible Nutrient Content Claims.**

56. Nutrient content claims are statements that "expressly or implicitly characterize the level of a nutrient" such as sugar. 21 C.F.R. § 101.13(b).[19] The "zero sugar" and "no sugar"

---

[19] By regulation, all declarations made within the nutrition panel are definitionally not nutrient content claims. 21 C.F.R. § 101.13(c) ("Information that is required or permitted by § 101.9 or § 101.36, as applicable, to be declared in nutrition labeling, and that appears as part of the nutrition label, is not a nutrient content claim and is not subject to

statements that appear (repeatedly and prominently) on the CHOBANI ZERO SUGAR packaging are all nutrient content claims.

57. Nutrient content claims are strictly forbidden ***unless*** specifically allowed under FDA regulations. 21 C.F.R. § 101.13 ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D.")

58. The referenced "subpart D" in the foregoing excerpt refers to Title 21 CFR Ch.1 Subch. B Subpart D – shown below:




59. Within Subpart D, Subsection 101.60 specifically governs the use of the nutrient content claims "zero sugar" and "no sugar" at issue in this case. *Id.* §101.60(c)(1).

60. Subsection 101.60(c)(1) contains three requirements. The first two are independently relevant here, and both must be satisfied before a food may be labeled "zero sugar" or "no sugar."[20]

61. This regulation states that "a food may not be labeled with such terms unless:"

---

the requirements of this section.") However, if a statement from inside the nutrition panel is repeated ***outside*** the nutrition panel, it then becomes a nutrient content claim and must adhere to the rules and regulations governing nutrient content claims. *Id.*

[20] 21 CFR § 101.60(c)(1) includes a third requirement for use of these nutrient content claims; this third requirement is not at issue in this case and is not discussed in these allegations.

> "(i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar"
>
> 21 C.F.R. § 101.60(c)(1)(i-ii).

62. CHOBANI ZERO SUGAR violates both prongs of this test.[21]

**i. CHOBANI ZERO SUGAR fails 21 C.F.R. 101.60(c)(1)(i) because it contains much more than 0.5 grams of sugar**

63. CHOBANI ZERO SUGAR fails the FDA nutrient content claim rules because it improperly excludes allulose from its calculation of sugar. When allulose is properly included as a sugar, the yogurt far exceeds the 0.5 gram threshold.

---

[21] There is another reason why Defendant's labeling is impermissible under federal law, which confirms that there exists no valid preemption defense. Pursuant to 21 CFR 101.13(f), all nutrient content claims "shall be in a type size no larger than two times the statement of identity and shall not be unduly prominent in type style compared to the statement of identity." CHOBANI ZERO SUGAR's label egregiously violates this requirement as well.

64. To determine the amount of sugar in a food, § 101.60(c)(1)(i) cross references another FDA regulation:

21 C.F.R. § 101.60

## § 101.60 Nutrient content claims for the calorie content of foods.

(c) Sugar content claims—

(1) Use of terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," "trivial source of sugar," "negligible source of sugar," or "dietarily insignificant source of sugar." Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories. Consequently, except as provided in paragraph (c)(2) of this section, a food may not be labeled with such terms unless:

(i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; and

21 C.F.R. 101.9(c)(6)(ii) defines how to calculate the amount of "sugar" in the food. If this defined formula results in more than 0.5 grams of sugar, the label may not include a "zero sugar" or "no sugar" nutrient content claim.

65. Turning to 21 C.F.R. 101.9(c)(6)(ii), sugar is defined as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. 101.9(c)(6)(ii).

66. Allulose, as a monosaccharide epimer of fructose, falls squarely within this definition.

67. This means the allulose in the CHOBANI ZERO SUGAR yogurt must be included when calculating the amount of sugar for purposes of the 0.5-gram threshold in 101.60(c)(1)(i).

### ii. CHOBANI ZERO SUGAR Has At Least 4 Grams of Sugar in Each Serving

68. Chobani does not list the amount of allulose contained in CHOBANI ZERO SUGAR on the product label, but it can be discovered if you do some digging on the Chobani website.

69. Under the "products" section of the Chobani website[22] there is an option to expand an otherwise hidden nutrition panel.

70. In a footnote at the bottom of the hidden nutrition panel, Chobani includes a calculation for "net carbs."




71. This footnote reveals that every 5.3 ounce serving of CHOBANI ZERO SUGAR contain four grams of allulose[23]:




---

22 For example, *see* Chobani.com, https://www.chobani.com/products/yogurt/zero-sugar/vanilla-cup

23 This amount of allulose per serving is the same for all CHOBANI ZERO SUGAR flavors listed on the Chobani.com website.

72. This amount of allulose, by itself, is 8 times more than the FDA's threshold for labeling a product "zero sugar" or "no sugar" under 101.60(c)(1)(i).

**iii. CHOBANI ZERO SUGAR Fails 101.60(c)(1)(ii) because it fails to denote "allulose" with an asterisk in the ingredient statement.**

73. Chobani also fails the second prong governing its nutrient content claims.

74. To be clear, the requirements of 101.60(c)(1) are conjunctive, and a violation of the first prong is sufficient to defeat preemption. But even if Chobani complied with (c)(1)(i) (and it doesn't), the nutrient content claims would still violate FDA regulations because Chobani also violates (c)(1)(ii).

75. Under this second prong, a food may only use the nutrient content claims "zero sugar" or "no sugar" if the "food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar." 21 C.F.R. § 101.60(c)(1)(ii).

76. Below is a picture of the CHOBANI ZERO SUGAR ingredient statement. As the annotated arrows below show, Chobani correctly adhered to the requirements of (c)(1)(ii) for two of its ingredients, milk and juice concentrate, by including a sugar asterisk. Notably missing from the label, however, is any asterisk or notation for allulose, even though allulose "is a sugar." 21 C.F.R. § 101.60(c)(1)(ii).




77. This is not just a technical violation. The violation of this second element is especially insidious when coupled with the blatant misrepresentations that Chobani makes on the front of the CHOBANI ZERO SUGAR packaging.

78. Chobani labels CHOBANI ZERO SUGAR as "all natural," and has marketed it as containing "no sugar or artificial sweeteners." Taken together, Chobani's intended message is clear: the yogurt is not made with any real sugar or with any fake sugar.

79. Allulose is not a common household name among consumers. In a 2021 marketing survey, only 15% of respondents had even heard of it, let alone knew it was a sugar.[24]

80. Chobani accurately denotes other ingredients commonly known to contain sugar. Because Chobani disclaims the presence of any real sugars or artificial sweeteners elsewhere on the label, reasonable consumers are deceived into believing that they are buying a product that is not sweetened with sugar.

81. But in fact, after milk and water, allulose – a sugar – is the third largest ingredient in CHOBANI ZERO SUGAR.

82. Because CHOBANI ZERO SUGAR's label includes multiple deceptive and unfair nutrient content claims, it is a "misbranded" product. 21 U.S.C.A. § 343(r).

---

[24] *Perceptions and Use of Dietary Sweeteners*, International Food Information Council, FoodInsight.Org, May 2021, https://foodinsight.org/wp-content/uploads/2021/05/IFIC-Sweeteners-Survey.May-2021.pdf

83. Because Plaintiffs' state-law claims seek to impose requirements identical to the federal labeling requirements on this theory, they are not expressly preempted on that basis.

### C. The FDA's 2020 Nonbinding Nutrition Panel Recommendations for Allulose do not change this result.

84. Chobani previously relied on the FDA's 2020 nonbinding Allulose Guidance to argue that Plaintiffs' claims were expressly preempted. The Seventh Circuit rejected that theory, holding that the guidance announced an enforcement policy rather than an interpretation altering § 101.9(c)(6)(ii).

85. Under the FDA's 2016 Nutrition Facts label rule, allulose was to be included in the nutrition panel declarations for Total Carbohydrates, Total Sugars, and Added Sugars.[25]

86. In 2019, the FDA issued a draft recommendation, made final in 2020, indicating that it would exercise "enforcement discretion" and refrain from punishing certain declarations regarding allulose, to the extent they are made ***within the four walls of the nutrition panel***.[26]

87. The 2020 recommendation begins with a prominent disclaimer noting that it merely "represents the current thinking of the [FDA]," it is "not binding on the FDA or the public" and "does not establish any rights for any person," and "should be viewed only as recommendations."[27]

> This guidance represents the current thinking of the Food and Drug Administration (FDA or we) on this topic. It does not establish any rights for any person and is not binding on FDA or the public. You can use an alternative approach if it satisfies the requirements of the applicable statutes and regulations. To discuss an alternative approach, contact the FDA staff responsible for this guidance as listed on the title page.

88. Such nonbinding recommendations are insufficient to preempt state law.

---

25 Oct. 2020 FDA Recommendation re Allulose, attached as Exhibit 2, Pg. 3.

26 *See generally Id.*

27 *Id.* Pg. 1.

89. Further, the nonbinding recommendation does not amend any existing laws or regulations, nor does it make any assertion that allulose is not a "sugar" or that products containing it can be labeled "zero sugar" or "no sugar." Nor have its recommendations ever been formalized into any final regulation or rule.

90. The 2020 nutrition panel recommendations are clear that they are strictly limited to recommendations regarding things that occur within the four walls of the nutrition panel:

> **I. Introduction**
>
> This guidance provides our current view on the declaration of allulose on Nutrition and Supplement Facts labels, as well as on the caloric content of allulose. This guidance also advises manufacturers of our intent to exercise enforcement discretion for the exclusion of allulose from the amount of "Total Sugars" and "Added Sugars" declared on the label and the use of a general factor of 0.4 calories per gram (kcal/g)[2] for allulose when determining "Calories" on the Nutrition and Supplement Facts labels pending review of the issues in a rulemaking.

91. The non-binding recommendation is limited to the nutrition panel. It does not say anything about changing the rules regarding nutrient content claims. These rules, including the regulations governing the nutrient content claims "zero sugar" and "no sugar" remain in full force and effect, and are subject to enforcement as currently enacted.

92. The 2020 recommendation does, however, reaffirm the FDA's view that allulose is a sugar, explaining that allulose "is a monosaccharide with a molecular formula of C6H12O6, and is an epimer of D-fructose" and discusses the ongoing and evolving scientific research regarding "***sugars like allulose***".[28]

**D. The FDA Has Not Made Any Changes To The Existing Sugar Nutrient Content Claim Regulations.**

93. This Court has jurisdiction over Plaintiffs' state law claims, and is capable of determining whether Chobani has engaged in deceptive conduct in violation of state law.

---

[28] *Id*. Ex. 2, Pg. 8, 9

94. The operative regulations have not been amended in a manner that changes the result here. As the Seventh Circuit confirmed on July 27, 2026, the FDA had not engaged in further rulemaking relevant to the definition of Total Sugars, and its original regulatory definition therefore remained in force. *Franco*, 184 F.4th 599. Accordingly, allulose remains a sugar under § 101.9(c)(6)(ii), and § 101.60(c)(1) continues to govern the "Zero Sugar" and "No Sugar" nutrient-content claims at issue here.

**E. Chobani's Deceptive Marketing, Labeling, and Conduct Constitute Deceptive and Unfair Practices**

95. Misleading people about what they are buying and putting into their bodies is wrong. When it is done by a nationwide food manufacturer who is intentionally deceiving consumers across the country, it constitutes consumer fraud.

96. Defendant's marketing and labeling of CHOBANI ZERO SUGAR was likely to, and did in fact, deceive reasonable consumers. This is because a reasonable interpretation of the labels: (a) "zero sugar" and (b) "no sugar" is that the labeled food actually has: (x) zero sugar and (y) no sugar.

97. Plaintiffs were in fact misled by the challenged labeling, and the same uniform labeling was likely to mislead reasonable Class Members.

98. At all times, Defendant's misrepresentations and deceptions were intentional. Defendant knew that (a) it was putting allulose in its yogurt; (b) allulose is a sugar; (c) its own labels misrepresented the presence and amount of sugar in CHOBANI ZERO SUGAR; (d) reasonable consumers would view and assume to be true the information on the labels when making purchasing decisions; (e) reasonable consumers would, and in fact did, rely on Chobani's deceptive misrepresentations and labels in making their purchasing decisions; (f) Chobani was not

giving the consumers the benefit of the bargain; and (g) Chobani was fraudulently charging consumers for "zero sugar" and "no sugar" yogurt because it knew there was sugar in the product.

99. This deception was all carried out with the intent that Plaintiffs and other consumers across the state would rely on the deceptive and unfair product labeling and description.

100. In reliance on this intentional deception, Plaintiffs were deprived of the benefit of the bargain because they did not receive what they thought they were paying for. Plaintiffs would not have bought CHOBANI ZERO SUGAR, or would have paid less for it, had they known the truth.

101. This deceptive conduct was carried out to enrich Defendant and its owners by boosting yogurt sales through fraudulent means.

102. CHOBANI ZERO SUGAR was launched on or around June 14, 2021.[29]

103. In the ensuing months, it was publicly reported that Chobani sales significantly out-performed its 2020 sales and revenue figures.[30]

104. Chobani's S-1 form filed with the SEC reveals that Chobani sells its products at "approximately 95,000 retail locations in the United States." Upon information and belief, CHOBANI ZERO SUGAR is sold at most or substantially all of these locations.

105. This nationwide distribution network allowed Chobani to deceive consumers across the country, including in Illinois.

---

[29] Chobani, LLC, *Chobani Launches Zero Sugar* with 60 Calories & Only Natural Ingredients*, Cision PR Newswire, June 14, 2021, https://www.prnewswire.com/news-releases/chobani-launches-zero-sugar-with-60-calories--only-natural-ingredients-301311356.html#:~:text=NEW%20YORK%2C%20June%2014%2C%202021,Sugar*%20with%20only%20natural%20ingredients.

[30] Christopher Doering, *Chobani reveals surging sales as it moves closer to IPO*, FoodDive.com, November 17, 2021, https://www.fooddive.com/news/chobani-reveals-surging-sales-as-it-moves-closer-to-ipo/610221/

106. The latest publicly available sales data for Chobani yogurt products indicates that Chobani sold over $1 billion in yogurt products alone during the nine months ending on September 25, 2021.[31]

107. These sales were increased through the deceptive and fraudulent marketing and sale of CHOBANI ZERO SUGAR. According to the Chobani S-1, "39% of [Chobani] product net sales were generated by product innovations in North America."

108. These "product innovations" included CHOBANI ZERO SUGAR, and at of the S-1 Defendant stated that it expected sales of CHOBANI ZERO SUGAR to continue to significantly grow in the future as more and more consumers are deceived by Chobani's deceptive and unfair practices.[32]

109. The challenged claims are literally false and, independently, unfair and likely to deceive reasonable consumers. A reasonable consumer could understand the prominent "Zero Sugar" and "No Sugar" representations to mean exactly what they say: that the product contains no sugar.

110. Defendant continues to deceptively label and market CHOBANI ZERO SUGAR, and the harm and damages caused by this conduct continue to increase every day the product remains in the marketplace.

## **CLASS ALLEGATIONS**

111. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23 on their own behalf and on behalf of a Class defined as follows:

---

[31] Securities and Exchange Comm'n, *Form S-1 Registration Statement*, SEC.gov, November 17, 2021 https://www.sec.gov/Archives/edgar/data/1869113/000119312521332196/d138208ds1.htm at *4

[32] *Id* at 157

**All persons who purchased, other than for resale, CHOBANI ZERO SUGAR yogurt in Illinois.**

Excluded from this Class are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all Class members that timely and validly request exclusion from the Class; and (iii) the Judge presiding over this action.

112. Pursuant to Rule 23(c)(4), Plaintiffs seek certification of the following issue for classwide adjudication: whether Chobani's uniform labeling and packaging of CHOBANI ZERO SUGAR, including the prominent "Zero Sugar" and "No Sugar" representations, was likely to deceive a significant portion of reasonable consumers into believing that the product contained no sugar, when each serving contained approximately four grams of allulose.[33]

113. A classwide determination of the proposed deception issue would resolve a central and essential ICFA element for every Illinois class member in one stroke, and leaves only causation/injury/damages issues, if any, for subsequent adjudication.

114. Certification of this issue for classwide treatment is appropriate because resolution of that issue is driven predominantly by a single common question: **whether reasonable consumers would interpret a food label prominently labeled "ZERO SUGAR" to mean that the product actually contains zero sugar?**

115. Certification of this issue for classwide treatment is also appropriate because it is superior to other available methods for fairly and efficiently adjudicating the controversy. The question of whether the packaging was likely to mislead a reasonable consumer is common to the

---

[33] *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020) (requiring "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."); *see also Franco v. Chobani, LLC,* 184 F.4th 599, 608 (7th Cir. 2026) ("After discovery, the Francos must prove that reasonable consumers could be misled by Chobani's promises.").

claims of every class member. This is an objective question, not one that depends on each purchaser's subjective understanding of the package. Certification of this issue is therefore the most practical and efficient way to resolve the litigation. *See Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 897–98 (7th Cir. 2024).

116. Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. On information and belief, there are tens of thousands (likely many more) Class members throughout the state. This is because, in part, Chobani distributes its products in many prominent grocery retailers throughout the state.

117. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased the same uniformly labeled product in Illinois, were exposed to the same challenged "Zero Sugar" and "No Sugar" representations, and assert the same ICFA deception theory as absent Class Members.

118. The proposed issue class also satisfies Rule 23(b)(3). Common questions predominate with respect to the issue identified above, and certification of that issue is superior to other available methods for fairly and efficiently adjudicating the controversy because it will resolve in a single proceeding the same objective deception question that otherwise would have to be litigated repeatedly by individual Class Members.

119. Plaintiffs are adequate Class representatives because Class Members and Plaintiffs have no interests adverse to the interests of other Class Members.

120. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained competent and experienced counsel.

**COUNT ONE**
**Violation of the Illinois Consumer Fraud And Deceptive Business Practices Act ("ICFA")**
**815 ILCS 505/1 *et seq.*; 815 ILCS 505/10a**

121. Plaintiffs restate and reallege the preceding allegations set forth as though fully set forth herein.

122. The Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1 *et seq.* broadly prohibits unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, or misrepresentation in the conduct of any trade or commerce.

123. Defendant violated this act by engaging in deceptive acts and practices by intentionally making deceptive misrepresentations on CHOBANI ZERO SUGAR's packaging and labels that it was "zero sugar" and had "no sugar" even though Defendant knew the product contained sugar. These deceptive misrepresentations were and are likely to mislead a reasonable consumer as to the presence and amount of sugar in CHOBANI ZERO SUGAR.

124. Defendant intended that Plaintiffs Jason Franco and Abigail Franco and the Illinois Class Members would rely on its false and misleading labels. Plaintiffs Jason Franco and Abigail Franco and the Illinois Class Members did in fact rely on the false and misleading labels when they purchased CHOBANI ZERO SUGAR.

125. Defendant's practice of using misrepresentations to sell CHOBANI ZERO SUGAR is also unfair. The practice offends public policy, is immoral, unethical, oppressive, or unscrupulous, and causes substantial injury to consumers because Illinois consumers who believe they are purchasing "zero sugar" yogurt with "no sugar" deserve to get the product they thought they were buying.

126. Defendant's conduct proximately caused actual economic damage because Plaintiffs were denied the benefit of the bargain when purchasing CHOBANI ZERO SUGAR.

127. Had Chobani not engaged in deceptive and unfair practices, Plaintiffs would not have purchased CHOBANI ZERO SUGAR at all or would have paid less for it.

128. Defendant's labeling, marketing, distribution, and sale of CHOBANI ZERO SUGAR occurred in the conduct of trade or commerce within the meaning of the ICFA.

129. Pursuant to 815 ILCS § 505/10a, Plaintiffs seek to recover their economic damages, punitive damages, and their attorneys' fees and costs.

**COUNT TWO**
**Money Had and Received**

130. Plaintiffs restate and reallege all of the foregoing paragraphs as though fully set forth herein.

131. Through the use of its deceptive, unfair, unconscionable, and inequitable trade practices, Defendant tricked plaintiffs into giving Defendant money with each purchase of CHOBANI ZERO SUGAR.

132. Upon information and belief, Defendant profited and (directly or indirectly) received proceeds from all sales of CHOBANI ZERO SUGAR at retail locations.

133. Chobani has thus received money which in equity and good conscience belongs to Plaintiffs and members of the Class.

**COUNT THREE**
**Unjust Enrichment**

134. Plaintiffs restate and reallege all of the foregoing paragraphs as though fully set forth herein.

135. Plaintiffs conferred a benefit on Defendant in that they purchased CHOBANI ZERO SUGAR yogurt that was manufactured, distributed and sold by the Defendant.

136. Defendant received the benefit because, absent consumer purchase of CHOBANI ZERO SUGAR, Defendant would not have received the monetary value paid by Illinois consumers for CHOBANI ZERO SUGAR.

137. Defendant's acceptance and retention of this benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representation about the amount and presence of sugar in CHOBANI ZERO SUGAR.

138. Equity cannot in good conscience permit Defendant to be economically enriched for such actions at Plaintiffs' and Class Members' expense and in violation of applicable law. Therefore, full disgorgement of such economic enrichment, including full disgorgement of all proceeds or purchase price value received by Defendant from any Plaintiff or Class Member for the purchase of any CHOBANI ZERO SUGAR yogurt, is required.

**COUNT FOUR**
**Declaratory Judgment**

139. Plaintiffs restate and reallege all of the foregoing paragraphs as though fully set forth herein.

140. Defendant's conduct of labeling and branding of CHOBANI ZERO SUGAR deceived and misled Plaintiffs and the Class Members as to the presence and amount of sugar in the CHOBANI ZERO SUGAR they purchased.

141. Plaintiffs and the Class Members have been harmed by Defendant's actions, and Illinois consumers (including but not limited to Plaintiffs and Class Members) face the risk of incurring additional harm if declaratory relief is not granted.

142. There is an actual controversy between Plaintiffs and Defendant, regarding Defendant's deceitful and misleading conduct and whether or not such deception constituted a violation of Plaintiffs' rights. If that controversy is not resolved, Defendant may continue to deceive and mislead Illinois consumers as to the content and ingredients of CHOBANI ZERO SUGAR, and Plaintiffs' harms will continue to accrue and grow.

143. Plaintiffs are each members of multi-person households who share common familial finances and purchase goods for the familial household's consumption. Plaintiffs suffer the same amount of harm each time any member of their familial household falls prey to Chobani's deceptive and misleading labeling, conduct and trade practices and purchases CHOBANI ZERO SUGAR as they have each time Plaintiffs purchased the product in their individual capacity.

144. Upon information and belief, there is also an actual controversy among members of the Class regarding Defendant's deceitful and misleading conduct and whether or not such deception constituted a violation of such consumers rights. If that controversy is not resolved, Defendant may continue to deceive and mislead Illinois consumers as to the content and ingredients of CHOBANI ZERO SUGAR.

145. Such controversies can be effectively terminated by a declaration of the parties' respective rights by this Court.

146. Plaintiffs and similarly situated Class Members thus have clear and ascertainable interests in the adjudication of their rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, including the Class Members respectfully request that the Court enter judgment in their favor against Defendant as follows:

A. Certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

B. Appointing Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel for the Class;

C. Awarding actual, treble, and punitive damages;

D. Entering judgment on the certified Rule 23(c)(4) issue that Chobani's uniform "Zero Sugar" and "No Sugar" labeling was likely to mislead reasonable consumers into believing that the product contained no sugar despite containing approximately four grams of allulose per serving;

E. Awarding Plaintiffs and the Class Members full disgorgement and/or restitution;

F. Imposing a constructive trust for the benefit of Plaintiffs and the Class Members on the unjustly retained benefits conferred by Plaintiffs and the Class Members upon Defendant;

G. Awarding Plaintiffs and the Class Members reasonable attorneys' fees, costs, and expenses; and,

H. Granting such other relief as the Court deems just and appropriate.

Dated: September 15, 2026

Respectfully submitted,

s/ Yates M. French
Yates M. French
Heather L. Kramer
Rathje Woodward LLC
300 E. Roosevelt Road, Suite 300
Wheaton, Illinois 60187
Ph: 630-668-8550
yfrench@rathjewoodward.com
hkramer@rathjewoodward.com

Alexander H. Burke
**BURKE LAW OFFICES LLC**
909 Davis Street, Suite 500
Evanston, Illinois 60201
Ph: 312-729-5288
ABurke@BurkeLawLLC.com

Michael R. Reese
REESE LLP
100 West 93rd Street, 16th Floor
New York, New York 10025
PH: (212) 643-0500
MReese@ReeseLLP.com